UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

IN RE:                                                  Case No. 8:04-md-2523-T-30TBM
                                                                      MDL 1626 - ALL CASES
ACCUTANE PRODUCTS
LIABILITY LITIGATION,
                                           /

# O R D E R

THIS MATTER is before the court on the following motions pending in this MDL:

(1) **U.S. Defendants' Motion for Relief from PSC Counsel's Improper Deposition Conduct** (Doc. 340) and Plaintiffs' response (Doc. 356);

(2) **U.S. Defendants' Motion to Strike J. Douglas Bremner, M.D., December 6th Supplemental Report** (Doc. 362) and Plaintiffs' response (Doc. 368); and

(3) **Hoffmann-La Roche Inc. and Roche Laboratories Inc.'s Emergency Motion to Compel Production of Study Data of J. Douglas Bremner, M.D. or in the Alternative for an Order Precluding Expert Testimony on this Data, and Unopposed Motion to Extend the Expert Deadlines Under the CMO** (Doc. 369), the Swiss Defendants' Joinder therein (Doc. 370), and Plaintiffs' response (Doc. 377).

A telephonic hearing on these and other matters was conducted on January 19, 2007.[1]

By the **U.S. Defendants' Motion to Strike J. Douglas Bremner, M.D., December 6th Supplemental Report** (Doc. 362), the Defendants seek an Order striking the [second] supplemental expert report of J. Douglas Bremner, M.D., dated December 6, 2006, and

---

[1] The motion filed in the Stupak matter will be addressed separately

limiting his trial testimony to the facts and opinions set forth in his original report.[2] As grounds, the Defendants argue that this supplemental report should be stricken as untimely, unjustified and unfairly prejudicial given that they received the report after the close of expert discovery and after Dr. Bremner had been deposed. In response, Plaintiffs argue the report chiefly updates further literature review that was prompted, in part, by the Defendants' attacks on the witness's methods and research, and in any event, offers no new opinions concerning the issue of general causation. Plaintiffs also urge that there is no prejudice to the Defendants as Dr. Bremner is to be deposed again and Defendants will have the opportunity to discuss any perceived new opinions or supporting materials prior to the date of any *Daubert* motions deadline.[3]

Upon consideration, the **U.S. Defendants' Motion to Strike J. Douglas Bremner, M.D., December 6th Supplemental Report** (Doc. 362) is **DENIED**. After considering Defendants' particularized allegations of new opinions proffered by Dr. Bremner, as well as the witness's original report (Doc. 362-5, 6, 7) and the December 6, 2006, supplemental report (Doc. 362-3, 4), I find no evidence of sweeping revisions or additions to this witness's opinions on causation. While the supplement reveals additional literature review and, in some of the six areas of the witness's consideration and method, a degree of new or additional

---

[2] By their reading of the report, Dr. Bremner now offers new opinions, sweeping revisions/additions to earlier opinions, and removes material that he previously submitted.

[3] On January 11, 2007, the district court granted the Defendants' emergency motion to extend the *Daubert* and dispositive motion deadlines in the psychiatric track cases. Those deadlines have been extended until two weeks after the date on which Dr. Bremner's final deposition is concluded. See (Doc. 376).

rationale in support of his conclusions, the core opinions remain the same.[4]  Further, Defendants' claim of severe prejudice is somewhat belied by the fact that a number of the additional reports or comments on the scientific literature cited in the supplement are dated and undoubtedly well known and previously fully reviewed by the Defendants.  As discussed at the hearing, Defendants may fully explore any changes they believe are suggested by the supplemental report at the witness's follow-up deposition.

As for **Hoffmann-La Roche Inc. and Roche Laboratories Inc.'s Emergency Motion to Compel Production of Study Data of J. Douglas Bremner, M.D. or in the Alternative for an Order Precluding Expert Testimony on this Data, and Unopposed Motion to Extend the Expert Deadlines Under the CMO** (Doc. 369), the Defendants seek an Order, pursuant to Federal Rules of Civil Procedure 26 and 37, compelling Plaintiffs to produce the data underlying Dr. Bremner's PET study concerning Accutane.  Specifically, Defendants seek production of the remaining data on the optical drive and the DAT tapes, as well as the work product and programs used to manipulate the data which demonstrates how

---

[4]By my review, the only (somewhat) problematic section of the supplement relates to the additional rationale supporting the witness's report on the "mechanism of action." However, by my review, the witness's opinions have not changed and there are no "sweeping" revisions as claimed by the defense.  Rather, it appears that the witness has broadened his review of the scientific literature in response to the continuous attacks on the witness's methodology by the defense in this court and similar state court proceedings in which the attacks have been more fully developed.  In my view, the proper remedy is to permit the already agreed upon additional deposition of this witness rather than to strike a supplemental report which is likely prompted by the Defendants' aggressive assault on the witness and seeks chiefly to bolster the witness's position without significantly changing his opinions. However, the case is at the point where the expert opinions and supporting rationale need to be locked in.  Accordingly, absent further order of this court, no additional supplemental reports will be permitted from this witness on the matter of general causation.

Dr. Bremner calculated the MAX numbers. As grounds, Defendants claim this data is critical to their ability to test the methods that were used in the regeneration of the pretreatment MAX numbers that Dr. Bremner relies upon in his initial study results and his November 6, 2006, supplemental report. Defendants also request that they be provided an additional thirty days after the production of the data within which to conduct a further deposition of Dr. Bremner.[5] Plaintiffs respond that they have produced the data and scans requested by the Defendants and that the real issue is over the program(s) used by Dr. Bremner in making his calculations. They maintain that they have provided the necessary information concerning the programing to generate the MAX numbers to the full extent of Dr. Bremner's knowledge.

From discussions at the hearing, it appears agreed that all data requested has been or is being produced. What remains in dispute is the programming/instructions utilized by Dr. Bremner in manipulating and calculating the MAX numbers. Plaintiffs contend that while this programming has been loaded onto Dr. Bremner's computer, he is incapable of simply copying the program to provide to Defendants as they request.[6]

Upon review of the pleadings and consideration of the arguments made at the hearing, **Hoffmann-La Roche Inc. and Roche Laboratories Inc.'s Emergency Motion to Compel Production of Study Data of J. Douglas Bremner, M.D. or in the Alternative for an**

---

[5] Defendants' other requests pertaining to the *Daubert* and dispositive motion deadlines are moot in light of the district judge's Order dated January 11, 2007, extending the *Daubert* and dispositive motion deadlines. (Doc. 376).

[6] According to Plaintiffs, the programming utilized by Dr. Bremner was written by an Emory University physicist or technologist, and they are uncertain whether Emory may claim a proprietary or confidential interest in the same.

**Order Precluding Expert Testimony on this Data, and Unopposed Motion to Extend the Expert Deadlines Under the CMO** (Doc. 369) is **GRANTED in part**. As discussed at the hearing, the dispute may be resolved if Defendants' expert is permitted access to Dr. Bremner's computer, assuming the program is still loaded on it. Plaintiffs' counsel shall confer with Dr. Bremner to ascertain whether the programming at issue is still on his computer and whether the same may be shared with Defendants' expert without further intervention of the court. If so, counsel are directed to arrange for Defendants' expert to examine Dr. Bremner's computer at a time mutually agreed upon by all involved. In all other regards, the motion is denied without prejudice.

By the **U.S. Defendants' Motion for Relief from PSC Counsel's Improper Deposition Conduct** (Doc. 340), the Defendants seek an Order, pursuant to Federal Rule of Civil Procedure 30(d)(3), enjoining PSC counsel, in particular lead counsel Paul Smith, from further allegedly inappropriate deposition conduct. As grounds, Defendants allege, among other things, that during the first expert deposition taken as part of this MDL, Mr. Smith improperly coached the expert, interrupted deposing counsel's questions, and inappropriately instructed the expert not to answer certain questions. Plaintiffs urge the court to deny the motion, essentially urging the motion is hogwash. Further, they attempt to refute the instances of alleged deposition misconduct and maintain that Mr. Smith's conduct at the expert deposition was entirely appropriate. Fortunately, by the hearing, cooler heads have prevailed and Defendants offered no further argument on the matter.

Accordingly, the court makes no findings on the matter. Counsel, including the wily Mr. Smith, are admonished to conduct themselves professionally at all times. Beyond this admonition, the **U.S. Defendants' Motion for Relief from PSC Counsel's Improper Deposition Conduct** (Doc. 340) is **DENIED**.

**Done and Ordered** in Tampa, Florida, this 24th day of January 2007.

THOMAS B. McCOUN III
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
United States District Judge
Counsel of Record