IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

IN RE: ACCUTANE
PRODUCTS LIABILITY LITIGATION
_______________________________/

MDL: 1626
Case No. 8:04-MD-2523-T-30TBM –
IBD TRACK LITIGATION

(APPLICABLE TO ALL IBD
TRACK CASES)

Dispositive Motion

HOFFMANN-LA ROCHE INC. AND ROCHE LABORATORIES INC.'S MOTION FOR SUMMARY JUDGMENT ON THE ADEQUACY OF THE WARNINGS

## TABLE OF CONTENTS

INTRODUCTION ..... 1

BACKGROUND ..... 1

A. Accutane and Inflammatory Bowel Disease ..... 1

B. Plaintiffs' Accutane Therapy ..... 4

SUMMARY JUDGMENT STANDARD ..... 5

ARGUMENT ..... 6

I. THE ACCUTANE IBD WARNINGS ARE ADEQUATE AS A MATTER OF LAW ..... 6

A. The Learned Intermediary Doctrine ..... 6

B. Drug Warnings that Clearly and Unambiguously Warn of the Condition Suffered by the Plaintiff Are Adequate as a Matter of Law ..... 7

C. Defendants' Accutane IBD Warnings Are Adequate as a Matter of Law ..... 9

1. The Accutane Label ..... 9

2. The Patient Brochure and Blister Pack ..... 13

3. The Texas Presumption ..... 14

II. PLAINTIFFS' EXPERTS' CLAIMS OF INADEQUACY DO NOT CREATE TRIABLE ISSUES OF FACT. ..... 15

A. Complaint: The Warning Should State that Accutane "Causes" IBD ..... 16

B. Complaint: "Temporally" Is Ambiguous ..... 20

1. "Temporally" Failed to Warn of Latent IBD ..... 20

2. "Temporally" Really Means "Temporary" ..... 21

C. Complaint: The Warning Contains Insufficient Monitoring and Diagnostic Instructions ..... 23

III. PLAINTIFFS' FRAUD/MISREPRESENTATION AND NEGLIGENCE CLAIMS MUST ALSO BE DISMISSED ..... 26

CONCLUSION ..... 28

# TABLE OF AUTHORITIES

## Cases

*American Key Corp. v. Cole Nat'l Corp.*, 762 F.2d 1569 (11th Cir. 1985) .................................... 5

*Ames v. Apothecon, Inc.*, 431 F. Supp. 2d 566 (D. Md. 2006) .................................... 8, 12, 16, 25

*Atlantic Nat'l Bank of Florida v. Vest*, 480 So. 2d 1380 (Fla. App. 2d Dist. 1985) .................................... 26

*Bell v. Dow Chem. Co.*, 847 F.2d 1179 (5th Cir. 1988) .................................... 5

*Cather v. Catheter Tech. Corp.*, 753 F. Supp. 634 (S.D. Miss. 1991) .................................... 8

*Caveny v. CIBA-GEIGY Corp.*, 818 F. Supp. 1404 (D. Colo. 1992) .................................... 8, 16, 17, 25

*Dunseth v. Eli Lilly & Co.*, 404 F. Supp. 2d 97 (D.D.C. 2005) .................................... 6

*Ehlis v. Shire Richwood, Inc.*, 367 F.3d 1013 (8th Cir. 2004) .................................... 8, 13 16

*Evers v. General Motors Corp.*, 770 F.2d 984 (11th Cir. 1985) .................................... 6

*Felix v. Hoffmann-LaRoche, Inc.*, 513 So. 2d 1319 (Fla. Dist. Ct. App. 1987), *aff'd* 540 So. 2d 102 (Fla. 1989) .................................... 7

*Felix v. Hoffmann-La Roche, Inc.*, 540 So. 2d 102 (Fla. 1989) .................................... 6, 7, 8

*Gilchrist Timber Co. v. ITT Rayonier, Inc.*, 696 So. 2d 334 (Fla. 1997) .................................... 26

*Hacket v. G.D. Searle & Co.*, 246 F. Supp. 2d 591 (W.D. Tex. 2002) .................................... 6

*Hansen v. Baxter Healthcare Corp.*, 764 N.E.2d 35 (Ill. 2002) .................................... 22

*Humphreys v. General Motors Corp.*, 839 F. Supp. 822 (N.D. Fla. 1993) .................................... 27

*In re Diet Drugs*, No. MDL 1203, 2000 WL 876900 (E.D. Pa. June 20, 2000) .................................... 23

*In re Meridia Products Liab. Litig.*, 328 F. Supp. 2d 791 (N.D. Ohio 2004), *aff'd*, 447 F.3d 861 (6th Cir. 2006) .................................... 9, 24

*In re Norplant Contraceptive Products Liability Litigation*, 215 F. Supp. 2d 795 (E.D. Tex. 2002) .................................... 9

*In re Norplant Contraceptive Products Liab. Litig.*, 955 F. Supp. 700 (E.D. Tex. 1997), *aff'd* 165 F.3d 374 (5th Cir. 1999) .................................... 27

*In re Rezulin Prods. Liab. Litig.*, 331 F. Supp. 2d 196 (S.D.N.Y. 2004) .................................... 9, 12, 17

*Jack v. Glaxo Wellcome, Inc.*, 239 F. Supp. 2d 1308 (N.D. Ga. 2002) .................................... 27

*Jacobs v. Dista Products Co.*, 693 F. Supp. 1029 (D. Wyo. 1988) .................................... 8

*Jones v. Gerwens*, 874 F.2d 1534 (11th Cir. 1989) .................................... 5

*Lance v. Wade*, 457 So. 2d 1008 (Fla. 1984) .................................... 26

*Leigh v. Warner Brothers, Inc.*, 212 F.3d 1210 (11th Cir. 2000) .................................... 5

*McNeil v. Wyeth*, 462 F.3d 364 (5th Cir. 2006) .................................... 7, 15



94036v1

*Martin v. Hacker*, 628 N.E.2d 1308 (N.Y. 1993) .......... 10

*Meridia Prods. Liab. Litig. v. Abbott Labs.*, 447 F.3d 861 (6th Cir. 2006) .......... 12

*Mikell v. Hoffman-LaRoche, Inc.*, 649 So. 2d 75 (La. Ct. App. 1994) .......... 1, 2, 11, 12

*Morguson v. 3M Co.*, 857 So. 2d 796 (Ala. 2003) .......... 23

*Paparo v. Ortho McNeil Pharm.*, No. 05-81044, 2007 U.S. Dist. LEXIS 2356 (S.D. Fla. Jan. 10, 2007) .......... 7

*Reynolds v. Bridgestone/Firestone, Inc.*, 989 F.2d 465 (11th Cir. 1993) .......... 7

*Rolen v. Burroughs Wellcome Co.*, 856 S.W.2d 607 (Tex. App. – Waco 1993) .......... 6, 8, 24

*Sterling Drug, Inc. v. Cornish*, 370 F.2d 82 (8th Cir. 1966) .......... 11, 23

*Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848 (10th Cir. 1998) .......... 15

*Tipton v Bergrohr GMBH-Siegen*, 965 F.2d 994 (11th Cir. 1992) .......... 5

*Toole v. Baxter Healthcare Corp.*, 235 F.3d 1307 (11th Cir. 2000) .......... 7

*Toole v. Baxter Healthcare Corp.*, 999 F.2d 1430 (11th Cir. 1993) .......... 7

*United States v. City of Miami*, 115 F.3d 870 (11th Cir. 1997) .......... 5

*Upjohn Co. v. MacMurdo*, 562 So. 2d 680 (Fla. 1990) .......... 8, 12, 24

*Ziliak v. Astra Zeneca L.P.*, 324 F.3d 518 (7th Cir. 2003) .......... 6, 8, 12, 16, 17, 25

**Statute**

Tex. Civ. Prac. & Rem. Code §82.007 (2003) .......... 14

**Rule**

Fed. R. Civ. P. 56(c) .......... 5

**Regulations**

21 C.F.R. § 201.57(c)(6)(i) .......... 10, 13

71 Fed. Reg. 3,922 (Jan. 24, 2006) .......... 25

## INTRODUCTION

The eight Plaintiffs' doctors in the Track II inflammatory bowel diseases ("IBD") cases were each expressly warned of the risk of IBD associated with use of the medication Accutane®. Furthermore, Accutane's packaging and patient brochures contained clear warnings of this risk. Plaintiffs nonetheless claim that Defendants Hoffmann-La Roche Inc. and Roche Laboratories Inc. (collectively, "Roche") failed to warn them and their doctors of the risk of IBD associated with use of the medication Accutane. When a drug manufacturer expressly warns the prescribing physician of the adverse event suffered by the plaintiff, however, that warning is adequate as a matter of law.

Consistent with this widely-recognized rule, a less descriptive version of the Accutane IBD warning than the ones applicable in these cases has been held adequate as a matter of law by the trial and appellate courts of another state. *Mikell v. Hoffman-LaRoche, Inc.*, 649 So. 2d 75 (La. Ct. App. 1994), Attachment 1. Defendants are entitled to summary judgment here on the same basis.

## BACKGROUND

### A. Accutane and Inflammatory Bowel Disease

Accutane is a prescription drug approved by the FDA in 1982 and indicated for the treatment of severe recalcitrant nodular acne. In 1983, after receiving and evaluating post-marketing reports of IBD in patients treated with Accutane, Defendants worked with the FDA to add a warning of "inflammatory bowel disease, including regional ileitis" to the "Adverse Reactions" section of the Accutane label. *See* Ex. A. It was this warning – which predated any Plaintiffs' use of Accutane and was less detailed than the warnings their physicians received – that the *Mikell* court held to be adequate as a matter of law,

because it clearly warned "of the possible side effect of inflammatory bowel disease associated with the use of Accutane." *Mikell*, 649 So. 2d at 80.

Shortly thereafter, the FDA convened a meeting of the Dermatologic Drugs Advisory Committee – a standing panel of independent doctors and scientists who serve as advisors to the FDA – to consider modifications to the Accutane label. FDA Dermatological Drugs Advisory Committee Transcript (Oct. 21, 1983), excerpt attached at Ex. B. Working with the Advisory Committee and the FDA, Roche added a discussion of IBD to the "WARNINGS" section of the label and enhanced the information provided regarding IBD:

> **WARNINGS:** . . .
>
> *Inflammatory Bowel Disease:* Accutane has been temporally associated with inflammatory bowel disease (including regional ileitis) in patients without a prior history of intestinal disorders. Patients experiencing abdominal pain, rectal bleeding or severe diarrhea should discontinue Accutane immediately.

Similar, but shorter, language remained in the "ADVERSE REACTIONS" section of the label. *See* Accutane Package Insert (1993 ed.), attached at Ex. C.

This warning language appeared in the Accutane label when seven of the eight Plaintiffs used Accutane: Kenneth Cannady claims that he used Accutane for three months in 1993;[1] Andrew Messick used Accutane from October 1994 through April 1995; Lacy Fechner used Accutane from June to the middle of November 1996; Caleb McClain used Accutane from November 1997 to March 1998; Kenneth Locke used Accutane for two weeks in December 1998; Mary Farr used Accutane from February

---

[1] Mr. Cannady has been unable to document his Accutane use with medical records, and he claims to have taken Accutane that was contained in a prescription bottle, even though Accutane by that time was only available in blister packs. Dep. of Kenneth Cannady (Nov. 11, 2005) ("Cannady Dep.") at 182:22-183:22, attached at Ex. D; Aug. 29, 1990 Letter from Roche to the FDA, at ACC 07008295, attached at Ex. E.

through June 1999; and Jared Stevens used Accutane from September 1999 through January 2000.

In 2000, Roche and the FDA modified the IBD warning to read as follows:

> **WARNINGS:** . . .
>
> Inflammatory Bowel Disease: Accutane has been associated with inflammatory bowel disease (including regional ileitis) in patients without a prior history of intestinal disorders. In some instances, symptoms have been reported to persist after Accutane treatment has been stopped. Patients experiencing abdominal pain, rectal bleeding or severe diarrhea should discontinue Accutane immediately (see ADVERSE REACTIONS: *Gastrointestinal*).

Accutane Package Insert (2000 ed.), attached at Ex. F. This warning language appeared in the Accutane label when Plaintiff Justin Rand used Accutane from August 2000 to February 2001.

In addition to warning doctors through the Accutane label, Roche also took the unusual step of warning patients directly that Accutane "may cause" serious gastrointestinal disease. Roche provided these patient warnings in two ways: through a brochure that doctors could provide to their patients containing warnings about Accutane, and by reprinting the brochure's warnings on the actual blister packaging containing the Accutane pills each Plaintiff used, a step that was unprecedented for its time.

Roche used the following language in the brochure and on the blister packaging until 2000, during the time when Plaintiffs Cannady, Messick, Fechner, McClain, Locke, Farr, and Stevens used Accutane.

> YOU SHOULD BE AWARE THAT ACCUTANE MAY CAUSE SOME LESS COMMON, BUT MORE SERIOUS, SIDE EFFECTS. BE ALERT FOR ANY OF THE FOLLOWING:
>
> . . .
>
> SEVERE STOMACH PAIN, DIARRHEA, RECTAL BLEEDING

> . . .
> IF YOU EXPERIENCE ANY OF THESE SYMPTOMS OR ANY OTHER UNUSUAL OR SEVERE PROBLEMS, DISCONTINUE TAKING ACCUTANE AND CHECK WITH YOUR DOCTOR IMMEDIATELY. THEY MAY BE THE EARLY SIGNS OF MORE SERIOUS SIDE EFFECTS WHICH, IF LEFT UNTREATED, COULD POSSIBLY RESULT IN PERMANENT EFFECTS.

Accutane Patient Brochure (6th ed. 1994), attached at Ex. G; Accutane Blister Pack (1993 ed.), attached at Ex. H.

In 2000, before Plaintiff Rand took Accutane, Roche modified the language in the patient brochure and on the blister packaging as follows.

> YOU SHOULD BE AWARE THAT CERTAIN SERIOUS, UNWANTED EVENTS HAVE BEEN REPORTED IN ACCUTANE (ISOTRETINOIN) PATIENTS. THE EVENTS INCLUDE:
>
> . . .
>
> SEVERE STOMACH PAIN, DIARRHEA, RECTAL BLEEDING
>
> . . .
>
> IF YOU EXPERIENCE ANY OF THESE EVENTS OR ANY OTHER UNUSUAL OR SEVERE PROBLEMS, DISCONTINUE TAKING ACCUTANE AND CHECK WITH YOUR PRESCRIBER IMMEDIATELY. THEY MAY BE THE EARLY SIGNS OF MORE SERIOUS MEDICAL PROBLEMS WHICH, IF LEFT UNTREATED, COULD POSSIBLY RESULT IN PERMANENT EFFECTS.

Accutane Patient Brochure (7th ed. 2000), attached at Ex. I; Accutane Blister Pack (2000 ed.), attached at Ex. J.

### B. Plaintiffs' Accutane Therapy

The eight Track II plaintiffs were each prescribed Accutane to treat their acne.[2] Plaintiffs allege that their use of Accutane caused symptoms such as abdominal pain,

---

[2] Dep. of James Allen (July 27, 2006) ("Allen Dep.") at 41:6-43:24, attached at Ex. K; Dep. of Walter Wyrick (June 13, 2006) ("Wyrick Dep.") at 31:10-35:11, attached at Ex. L; Dep. of Douglas Miller (May 12, 2006) at 15:13-20:24, attached at Ex. M; Dep. of James Childs (April 24, 2006) at 12:21-14:5,

diarrhea and rectal bleeding.[3] Plaintiffs brought these suits claiming that Accutane was the cause of their symptoms and that Roche failed to adequately warn of the risk of IBD associated with Accutane.

## SUMMARY JUDGMENT STANDARD

Summary judgment should be granted where "there is no genuine issue as to any material fact." FED. R. CIV. P. 56(c). To avoid summary judgment, the non-moving party must establish the existence of elements essential to that party's case for which it has the burden of proof at trial. *See Jones v. Gerwens*, 874 F.2d 1534, 1538 (11th Cir. 1989). "An issue of fact is material if it is a legal element of the claim, as identified by substantive law governing case, such that its presence or absence might affect outcome of suit." *Tipton v Bergrohr GMBH-Siegen*, 965 F.2d 994, 998 (11th Cir. 1992).

Expert opinions lacking credible support do not create issues of fact. *See American Key Corp. v. Cole Nat'l Corp.*, 762 F.2d 1569, 1580 (11th Cir. 1985). For instance, opinions derived from erroneous data are appropriately excluded. *See United States v. City of Miami*, 115 F.3d 870, 873 (11th Cir. 1997); *Bell v. Dow Chem. Co.*, 847 F.2d 1179, 1184 (5th Cir. 1988) ("Summary judgment is appropriate where expert testimony rests on an erroneous assumption of law or fact."). In addition, conclusory allegations without specific supporting facts or conclusory allegations based on subjective beliefs have no probative value and thus do not create issues of fact. *See Leigh*

---

attached at Ex. N; Dep. of Kathleen O'Sullivan (Sept. 14, 2005) at 18:21-19:6, attached at Ex. O; Dep. of Caleb McClain (May 5, 2003) at 124:21-25, attached at Ex. P; Dep. of Thomas Lyles (Jan. 11, 2007) ("Lyles Dep.") at 39:2-40:12, attached at Ex. Q; Ex. D (Cannady Dep.) at 181:7-9.

[3] Dep. of Andrew Messick (March 8, 2006) ("Messick Dep.") at 178:3-181:25, attached at Ex. R; Dep. of Jared Stevens (March 27, 2006) ("J. Stevens Dep.") at 211:2-230:21, attached at Ex. S; Dep. of Mary Farr (Nov. 8, 2005) ("Farr Dep.") at 53:1-7, 95:16-96:21, attached at Ex. T; Dep. of Lacy Fechner (Nov. 3, 2005) ("Fechner Dep.") at 199:1-200:4, 228:10-236:10, attached at Ex. U; Dep. of Justin Rand (July 20, 2004) ("Rand Dep.") at 32:3-16, attached at Ex. V; Ex. D (Cannady Dep.) at 124:4-126:6.

*v. Warner Bros., Inc.*, 212 F.3d 1210, 1217 (11th Cir. 2000); *Evers v. General Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985).

"[I]n the context of prescription drugs, the adequacy of a warning may be determined as a matter of law." *Felix v. Hoffmann-La Roche, Inc.*, 540 So. 2d 102, 105 (Fla. 1989); *Ziliak v. Astra Zeneca L.P.*, 324 F.3d 518, 521 (7th Cir. 2003) (applying Indiana law); *Rolen v. Burroughs Wellcome Co.*, 856 S.W.2d 607, 609 (Tex. App. – Waco 1993).

## ARGUMENT

### I. THE ACCUTANE IBD WARNINGS ARE ADEQUATE AS A MATTER OF LAW

Prescription drug manufacturers are required to warn prescribing doctors of the risks associated with their drugs. Where the manufacturer provides a clear and accurate statement of risks to the doctor, as Roche did here, the manufacturer has met its duty to warn and may not be held liable for product liability claims.

#### A. The Learned Intermediary Doctrine

The laws of Florida, Texas, and Indiana[4] – like those of almost every state – recognize that a manufacturer may not be held liable for an "unavoidably unsafe" prescription medication unless the manufacturer fails to provide adequate warnings regarding the known risks of the medication. *Ziliak*, 324 F.3d at 521 (7th Cir. 2003) (applying Indiana law); *Hacket v. G.D. Searle & Co.*, 246 F. Supp. 2d 591, 595 (W.D. Tex. 2002) (applying Texas law); *Felix*, 540 So. 2d at 105 (Fla. 1989). Moreover, under

[4] Plaintiffs' claims are presumptively governed by the laws of their home states: Texas for Plaintiffs Cannady, Farr, Fechner, Locke, Messick, and Stevens; Indiana for Plaintiff McClain; and Florida for Plaintiff Rand. *See, e.g.*, *Dunseth v. Eli Lilly & Co.*, 404 F. Supp. 2d 97, 102 (D.D.C. 2005) (applying law of state where plaintiff "was prescribed, bought, and ingested" medicine). As demonstrated herein, however, the law of Florida, Texas and Indiana is in accord in all relevant respects.

the "learned intermediary" doctrine, the manufacturer's duty to warn runs solely to the prescribing physician, not to the patient. *Felix*, 513 So. 2d 1319, 1320 (Fla. Dist. Ct. App. 1987) ("If the warning given to the medical community is sufficient, then the drug manufacturer is not liable for injuries sustained by the physician's patients as a result of the side effects of the drugs."), *aff'd* 540 So. 2d 102 (Fla. 1989).

Because manufacturers must warn physicians of the known risks of a medication, "the adequacy of [the] warning is measured by its effect on the *physician*, . . . to whom it owed a duty to warn, and not by its effect on [the consumer]." *Toole v. Baxter Healthcare Corp.*, 999 F.2d 1430, 1433 (11th Cir. 1993). Thus, the adequacy of the warning is measured by taking into account the learned intermediary's professional and educational background. *See Toole v. Baxter Healthcare Corp.*, 235 F.3d 1307, 1314 (11th Cir. 2000) ("[W]e rely on the expertise of the physician intermediary . . . .").

**B. Drug Warnings that Clearly and Unambiguously Warn of the Condition Suffered by the Plaintiff Are Adequate as a Matter of Law**

A warning is adequate as a matter of law where it provides an "accurate, clear and unambiguous" statement of possible risks associated with the drug. *Felix*, 540 So. 2d at 105 (Fla. 1989). "[T]he warning need only be one that is *reasonable* under the circumstances and it need not be the best possible warning." *Reynolds v. Bridgestone/Firestone, Inc.*, 989 F.2d 465, 471 (11th Cir. 1993) (emphasis added). "In determining the adequacy of the warning, the critical inquiry is whether it was adequate to warn the physician of the possibility that the drug caused the injury alleged by the plaintiff." *Paparo v. Ortho McNeil Pharm.*, No. 05-81044, 2007 U.S. Dist. LEXIS 2356, at *7 (S.D. Fla. Jan. 10, 2007).

Applying these principles, courts in Texas, Florida and Indiana have held that warnings which clearly and accurately inform doctors of the specific adverse event suffered by the plaintiff are adequate as a matter of law. *See, e.g., Ziliak*, 324 F.3d at 521 (applying Indiana law and finding warning of "rare instances of glaucoma, increased intraocular pressure, and cataracts" adequate as matter of law); *Felix*, 540 So. 2d at 105 (holding teratogenicity warning adequate as matter of Florida law); *Upjohn Co. v. MacMurdo*, 562 So. 2d 680, 683 (Fla. 1990) (holding warning that "breakthrough bleeding, spotting, and change in menstrual flow" "have been observed" adequate to warn of bleeding so severe as to lead to a hysterectomy); *Rolen v. Burroughs Wellcome Co.*, 856 S.W.2d 607, 609 (Tex. App. – Waco 1993) (finding warning of Stevens-Johnson syndrome adequate as a matter of law). These well-established principles are applied throughout the country.[5] This includes courts in multidistrict litigations:

5 *See, e.g., Ehlis v. Shire Richwood, Inc.*, 367 F.3d 1013, 1018-19 (8th Cir. 2004) (applying North Dakota law) (holding warning that Adderall may exacerbate "behavior disturbance and thought disorder" and warning of "psychotic episodes" adequate to warn of Adderall-induced homicidal/suicidal psychosis); *Dash v. Roche Labs.*, No. 94-55814, 1996 U.S. App. LEXIS 983, at *7 (9th Cir. Jan. 11, 1996) (applying California law and holding Accutane warning of persistent dry eye adequate and stating that "[a] written warning is adequate if it directly warns in plain and explicit terms of the specific risk that has caused injury to plaintiff."); *Ames v. Apothecon, Inc.*, 431 F. Supp. 2d 566, 573 (D. Md. 2006) (applying Maryland law) (concluding that warning in "Adverse Reactions" section that "[t]he following adverse reactions have been reported as associated with the use of penicillins . . . toxic epidermal necrolysis" was adequate); *Caveny v. CIBA-GEIGY Corp.*, 818 F. Supp. 1404, 1406 (D. Colo. 1992) (rejecting expert testimony on inadequacies, holding warning that aplastic anemia is possible adverse reaction adequate, and stating that "[a] warning is adequate when it explains to the physician the risk which the plaintiff is asserting to be associated with the drug"); *Cather v. Catheter Tech. Corp.*, 753 F. Supp. 634, 640 (S.D. Miss. 1991) (applying Mississippi law) ("A warning may be held adequate as a matter of law where the adverse effect that was ultimately visited upon the patient was one that the manufacturer specifically warned against."); *Jacobs v. Dista Prods. Co.*, 693 F. Supp. 1029, 1035 (D. Wyo. 1988) (applying Wyoming law) (holding warning adequate because "the drug manufacturer specifically warned that a possible side effect . . . is pseudomembranous colitis).

| MDL | Allegation | Warning | Holding |
|---|---|---|---|
| Meridia | Alleged inadequacy: increased blood pressure | WARNINGS: "Meridia substantially increases blood pressure in some patients" and "regular monitoring of blood pressure is required when prescribing Meridia." | Warning ***adequate*** as matter of law: "The law does not mandate that pharmaceutical manufacturers and marketers provide such specific instructions that they leave little room for doctors' reasonable medical judgment." *In re Meridia Prods. Liab. Litig.* 328 F. Supp. 2d 791, 810-15 (N.D. Ohio 2004), *aff'd* 447 F.3d 861 (6th Cir. 2006). |
| Rezulin | Alleged inadequacy: dizziness, headache, diarrhea, nausea, pain, etc. | ADVERSE REACTIONS: [Each adverse event is listed in a table] | Warnings ***adequate*** as matter of law: "[T]he Rezulin information set out in the PDR specifically warned that the injuries claimed by the plaintiffs . . . were possible side effects of Rezulin . . . ." *In re Rezulin Prods. Liab. Litig.*, 331 F. Supp. 2d 196, 200-02 (S.D.N.Y. 2004). |
| Norplant | Alleged inadequacy: 26 side effects | ADVERSE REACTIONS: [Each adverse event is listed in a table] | Warnings ***adequate*** as matter of law: "[A]ny competent healthcare provider would have been aware of the 26 'Adverse Reactions' listed in the Norplant physician labeling at the time he or she prescribed Norplant." *In re Norplant Contraceptive Prods. Liab. Litig.*, 215 F. Supp. 2d 795, 825-29 (E.D. Tex. 2002). |

### C. Defendants' Accutane IBD Warnings Are Adequate as a Matter of Law

#### 1. The Accutane Label

It is undisputed that Plaintiffs' doctors were expressly warned that IBD – the condition Plaintiffs allege was caused by Accutane – has been associated with Accutane treatment. As noted above, the pre-2000 Accutane label that was in place when all but one of the Plaintiffs used Accutane contained the following IBD warning:



94036v1

> **WARNINGS:** . . .
>
> *Inflammatory Bowel Disease:* Accutane has been temporally associated with inflammatory bowel disease (including regional ileitis) in patients without a prior history of intestinal disorders. Patients experiencing abdominal pain, rectal bleeding or severe diarrhea should discontinue Accutane immediately.

Ex. C.

The 2000 label that was in place when Justin Rand used Accutane contained a similar IBD warning:

> **WARNINGS:** . . .
>
> Inflammatory Bowel Disease: Accutane has been associated with inflammatory bowel disease (including regional ileitis) in patients without a prior history of intestinal disorders. In some instances, symptoms have been reported to persist after Accutane treatment has been stopped. Patients experiencing abdominal pain, rectal bleeding or severe diarrhea should discontinue Accutane immediately (see ADVERSE REACTIONS: *Gastrointestinal*).

Ex. F.

These warnings go well beyond simply advising doctors that IBD is a risk of Accutane treatment, in several regards.

First, the statement of IBD risk appears in the "Warnings" section of the Accutane label. As defined by federal regulation, this section of the label provides physicians with the most significant risks associated with a drug. *See* 21 C.F.R. § 201.57(c)(6)(i); *Martin v. Hacker*, 628 N.E.2d 1308, 1312 (N.Y. 1993) ("[T]he Warnings section deals with side effects of graver consequence than the Adverse Reactions section."). Plaintiffs' labeling expert agrees: "[T]he warnings is the most observed section of the insert." Dep. of Cheryl Blume (Nov. 17, 2006) ("Blume Dep. I") at 245:19-20, attached at Ex. W (testifying in psychiatric Accutane deposition).

Second, Roche provided detail about the cases of Accutane-associated IBD it had received. For example, Roche stated that it had received such reports even from "patients without a prior history of intestinal disorders." Exs. C (1993 label), F (2000 label).

Third, Roche's warning listed the three principal symptoms of IBD for which doctors should monitor their patients: "abdominal pain, rectal bleeding [and] severe diarrhea." Exs. C, F. "If the doctor is properly warned of the possibility of a side effect in some patients, and is advised of the symptoms normally accompanying the side effect, there is an excellent chance that injury to the patient can be avoided." *Sterling Drug, Inc. v. Cornish*, 370 F.2d 82, 85 (8th Cir. 1966) (coining the term "learned intermediary"). Plaintiffs' experts agree that abdominal pain, rectal bleeding, and severe diarrhea are the most common initial symptoms of IBD. Dep. of Alan Moshell (Jan. 12, 2007) ("Moshell Dep. II") at 86:5-18, attached at Ex. X; Dep. of Alan Moshell (Jan. 26, 2007) ("Moshell Dep. III") at 412:3-14, attached at Ex. Y. Indeed, most of the Plaintiffs initially sought medical treatment for these symptoms.[6]

Finally, these warnings unambiguously instruct physicians to "discontinue Accutane ***immediately***" if their patients experience any of these symptoms. Exs. B, D (emphasis added). This explicit instruction to physicians could not be clearer.

These warnings ***exceed*** the standard for demonstrating adequacy as a matter of law. Indeed, a prior less descriptive version of the Accutane IBD warning has previously been held to be adequate as a matter of law. In *Mikell*, the plaintiff alleged that Accutane caused his IBD and that Roche failed to warn of the risk of IBD. 649 So. 2d at 76-77.

---

6 Ex. R (Messick Dep.) at 178:3-181:25; Ex. S (J. Stevens Dep.) at 211:2-230:21; Ex. T (Farr Dep.) at 53:1-7, 95:16-96:21; Ex. U (Fechner Dep.) at 199:1-200:4, 228:10-236:10; Ex. V (Rand Dep.) at 32:3-16; Ex. D (Cannady Dep.) at 124:4-126:6.

The plaintiff in *Mikell* took Accutane in early 1984, when the Accutane label listed IBD only in the "Adverse Reactions" section of the label, and not in the "WARNINGS" section, as was the case when Plaintiffs used Accutane. Moreover, the *Mikell* label lacked the specific risk information contained in the labels relevant to this case, instead simply stating: "The following reactions have been reported in less than 1% of patients and may bear no relationship to therapy . . . inflammatory bowel disease (including regional ileitis), mild gastrointestinal bleeding . . . ." *Id.* at 78. The *Mikell* court nonetheless held this less descriptive warning to be adequate as a matter of law. *Id.* at 80.

Other courts have similarly held less prominent or less descriptive warnings to be adequate as a matter of law. For example, a number of courts have found listings of adverse events in the "Adverse Reactions" or other sections of the label to be adequate as a matter of law. *See, e.g.*, *Ziliak*, 324 F.3d at 519, 521 (7th Cir. 2003) (applying Indiana law); *Ames*, 431 F. Supp. 2d at 569, 573; *Rezulin*, 331 F. Supp. 2d at 199-200, 202. If these listings of adverse events – without any discussion of symptoms and without any instructions to physicians – are adequate as a matter of law, then it is inescapable that the much more prominent, detailed, and informative warnings at issue in these cases are adequate as a matter of law.

A number of other courts – including the Florida Supreme Court – have held warnings of antecedent conditions sufficient to warn of ultimate conditions. *See, e.g.*, *Upjohn Co. v. MacMurdo*, 562 So. 2d 680, 681, 683 (Fla. 1990) (holding warning of "breakthrough bleeding, spotting, and change in menstrual flow" adequate to warn of bleeding so severe as to lead to hysterectomy); *Meridia Prods. Liab. Litig. v. Abbott Labs.*, 447 F.3d 861, 864, 867 (6th Cir. 2006) (applying law of multiple jurisdictions)

(holding warning of "increase[d] blood pressure" adequate to warn of heart attack and stroke associated with increased blood pressure); *Ehlis v. Shire Richwood, Inc.*, 367 F.3d 1013, 1015, 1018-19 (8th Cir. 2004) (applying North Dakota law) (holding warning of "[p]sychotic episodes" and "behavior disturbance and thought disorder" adequate to warn of homicidal/suicidal psychosis). The Accutane IBD warning, in contrast, warned not only of the antecedent symptoms (rectal bleeding, severe diarrhea, and abdominal pain), but also of the much more serious ultimate condition (inflammatory bowel disease). Exs. C, F.

In all respects, then, the Accutane IBD warning plainly exceeds the standard by which courts measure the adequacy of drug warnings.

**2. The Patient Brochure and Blister Pack**

The label alone fully satisfied Defendants' duty to warn Plaintiffs' physicians. To ensure that patients appropriately monitored themselves for the signs of IBD, however, Defendants supplemented their physician warnings by providing physicians with brochures they could give to their patients and by reprinting the warnings from these brochures on the blister packaging that each Plaintiff used. Defendants had no duty to provide these direct patient warnings under the law of any State, but they did so anyway.

These patient warnings alerted Plaintiffs to the principal signs of IBD, told them to stop Accutane treatment immediately if those symptoms occur, and told them to consult a doctor for treatment. Plaintiffs received these warnings directly when their prescribers gave them the Accutane patient brochure and ***every day thereafter for the duration of their Accutane therapy*** as they removed their Accutane pills from the blister packaging containing these warnings. By directly warning Accutane patients of the conditions at issue in this litigation, Defendants exceeded the duty they owed Plaintiffs.

### 3. The Texas Presumption

Further reinforcing that Defendants' warnings were plainly adequate as a matter of law, a Texas statute creates an independent basis for finding adequacy as a matter of law. The Texas Legislature has created a presumption that a drug warning is adequate if the warning has been approved by the FDA:

> In a products liability action alleging that an injury was caused by a failure to provide adequate warnings or information with regard to a pharmaceutical product, there is a rebuttable presumption that the defendant or defendants, including a . . . manufacturer. . . are not liable with respect to the allegations involving failure to provide adequate warnings or information if: (1) the warnings or information that accompanied the product in its distribution were those approved by the United States Food and Drug Administration . . . .

TEX. CIV. PRAC. & REM. CODE §82.007 (2003).

The Texas presumption may be rebutted by establishing that "the defendant . . . withheld from or misrepresented to the [FDA] required information that was material or relevant to the performance of the product and was causally related to the claimant's injury."[7] TEX. CIV. PRAC. & REM. CODE §82.007(b)(1) (2003). None of Plaintiffs' regulatory or other experts has identified any information that Roche deliberately concealed or otherwise failed to disclose to the FDA. Dep. of Cheryl Blume (Jan. 23, 2007) ("Blume Dep. III") at 202:7-11 ("Q. From what you have seen, are you aware of any information that Roche withheld from the FDA regarding Accutane and IBD? A. I don't – yeah, I don't know. I can't answer the question."), attached at Ex. Z; Ex. Y (Moshell Dep. III) at 288:4-8 ("Q. Dr. Moshell, you said now repeatedly that you have no idea what information was provided to the FDA and what information was not provided to the FDA, correct? A. Correct."). Because the Texas Plaintiffs (Plaintiffs

---

7 Other statutorily-specified means of rebutting the presumption are not applicable here.

Cannady, Farr, Fechner, Locke, Messick and Stevens) have offered no evidence to rebut the presumption, the presumption of adequacy is conclusive.

* * *

Defendants provided unambiguous warnings to Plaintiffs' prescribing physicians of the potential risk of Accutane-induced IBD, told the doctors how to monitor for the disease, and advised the doctors to stop treatment if disease symptoms appear. These warnings are adequate as a matter of law.

## II. PLAINTIFFS' EXPERTS' CLAIMS OF INADEQUACY DO NOT CREATE TRIABLE ISSUES OF FACT.

To avoid summary judgment on adequacy, Plaintiffs have manufactured arguments about how – in their view – the clear IBD warnings in the label could have been a little more clear or could have provided a little more information. Tellingly, Plaintiffs have not identified some of the deficiencies that other courts have looked to in declining to find labels adequate as a matter of law, such as understating the disease incidence rate in the face of contrary internal data. *See McNeil v. Wyeth*, 462 F.3d 364, 368 (5th Cir. 2006) (declining to hold adequate as a matter of law a warning in light of published studies indicating that the risk of the condition was significantly higher than the figure listed in the warning); *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 854 (10th Cir. 2003) (declining to hold adequate as a matter of law warning of "rare reports" of side effect when peer-reviewed medical articles had established "association" of side effect and drug's "chemical and pharmacological analog" twelve years before drug was introduced to marketplace). Instead, Plaintiffs – along with Cheryl Blume and Alan Moshell, the two labeling experts Plaintiffs have hired to opine on the "something more"

the label could have said – seek to abstract individual words and phrases from the label and argue that, in isolation, the words might require clarification.

None of these allegations creates an issue of fact on the adequacy of the warnings because none of these allegations change the fact that Plaintiffs and their physicians were expressly and unambiguously warned of the possible IBD risk of Accutane. To the contrary, Plaintiffs' ultimate dispute is with the proposition that a drug warning can ever be adequate as a matter of law. In Plaintiffs' view, an expert report identifying alternative wording for a warning automatically defeats summary judgment even when the warning advised their doctors of the specific adverse event they suffered. Courts readily reject similar arguments. *See Ziliak*, 324 F.3d at 521 (7th Cir. 2003) (applying Indiana law); *Dash*, 1996 U.S. App. LEXIS 983, at *4-6 (9th Cir. Jan. 11, 1996); *Ames*, 431 F. Supp. 2d at 573 (D. Md. 2006) (applying Maryland law); *Caveny*, 818 F. Supp. at 1406 (D. Colo. 1992) (rejecting expert testimony on inadequacies, holding warning that aplastic anemia is possible adverse reaction adequate, and stating that "[a] warning is adequate when it explains to the physician the risk which the plaintiff is asserting to be associated with the drug").

The law requires rejection of each of Plaintiffs' arguments against adequacy.

### A. Complaint: The Warning Should State that Accutane "Causes" IBD

Plaintiffs argue that the Accutane warning should have stated that Accutane "causes" IBD. *See* Ex. X (Moshell Dep. II) at 15:13-19; Dep. of Cheryl Blume (Dec. 19, 2006) ("Blume Dep. II") at 382:2-383:1, attached at Ex. AA. Plaintiffs have not demonstrated a triable issue of fact on this claim.[8]

---

[8] Indeed, Plaintiffs' experts Blume and Moshell will not even be permitted testify that Accutane "causes" IBD. Order Denying Mot. to Exclude Testimony of Alan Moshell, M.D., Docket No. 457 (Apr.

First, Plaintiffs' argument misunderstands the law: "[i]f a pharmaceutical manufacturer warns doctors that specific adverse events are *associated* with the use of a drug, then a causal relationship between use of the drug and development of potential side effects is *implicit* in the warning." *Ziliak*, 324 F.3d at 521 (emphasis added) (Indiana law); *see also Caveny v. CIBA-GEIGY Corp.*, 818 F. Supp. 1404, 1405-06 (D. Colo. 1992) (rejecting expert opinions that warning was "lacking in the sense of urgency" and "should [have] be[en] stronger" and holding warning adequate as matter of law); *Rezulin*, 331 F. Supp. 2d at 199-200, 202 (holding listing of adverse events, with no statement of causation, adequate as matter of law). Plaintiffs' expert testimony demanding a causation warning is therefore incompatible with the duty owed under state law.

Second, Plaintiffs' demand for a causation warning is inconsistent with the Accutane warning itself, as the Accutane labels at issue here actually did more than merely warn of an association. The 2000 and pre-2000 labels both told doctors that IBD had arisen "in patients without a prior history of intestinal disorders," Exs. C, F, communicating the seriousness of some of the case reports that Roche had received.

The pre-2000 warning also told patients that Accutane was "temporally associated" with IBD. Plaintiffs' experts explicitly rely on a "temporal association" between Accutane and IBD in their efforts to prove causation. *See* Deposition of Ronald Fogel (Dec. 13, 2006) (Fogel Dep. I) at 215:6-25, attached at Ex. BB; Ex. Z (Blume Dep. III) at 23:22–24:12 (citing alleged "temporal relationship between administration of Accutane and the development of the lupudic symptoms" in response to question asking

---

10, 2007); Order Denying Mot. to Exclude the Testimony of Dr. Cheryl Blume, Docket No. 461 (Apr. 10, 2007). Accordingly, they have no support for their proposition that the label should state that Accutane "causes" IBD.

her to identify her bases for concluding that Accutane causes lupus). Plaintiffs cannot argue on the one hand that the word "temporally" weakens the warning and on the other hand argue that the word conveys critical information about the alleged causal relationship between Accutane and IBD. Indeed, Plaintiffs' labeling Cheryl Blume volunteered during her deposition that companies use the phrase "temporally associated" to communicate risk information in the absence – as is the case here – of the clinical or epidemiological studies necessary even to suggest that causation might exist:

> Q. Can a company include a causation warning in a label without a clinical or epidemiological study demonstrating a statistically significantly higher rate of adverse events in connection with a drug?
>
> . . . .
>
> A. Well, if you look at adverse-event warnings, adverse events or warnings, you will see that companies address causality in a variety of ways. I mean, it's not uncommon to see an insert that will say something to the effect, "The following adverse events have been ***temporally associated***." Causation has not yet been – causation has not yet been confirmed; however, given the severity of the events, it cannot be ruled out.
>
> I mean, if you filter the PDR today, you will probably see 20 or 30 different products that include that in their postmarketing sections. What they're saying is, it did or the event occurred. That while we haven't specifically proven causation yet, ***given the temporality*** or given the event or given other events, it can't be ignored. So, you see those kind of statements in the absence of placebo-controlled studies.

Ex. Z (Blume Dep. III) at 80:5-81:4 (emphases added).

In addition to the label, the pre-2000 patient brochure and blister packaging told patients that Accutane "may cause" a number of potentially severe gastrointestinal-related symptoms. *See* Exs. G, H. Plaintiffs' own labeling expert says that a warning that a drug "may cause" a condition is equivalent to warning of causation. *See* Ex. AA (Blume Dep. II) at 109:16-17 ("I believe when it says may cause it causes it.").

Third, Plaintiffs have not offered expert testimony showing that the scientific data – ***as it existed when Plaintiffs took Accutane*** – demonstrated that Accutane "causes" IBD. Instead, Plaintiffs have offered Dr. Ronald Fogel to testify that, in his view, the evidence ***now*** supports such a statement. *See* Expert Rep. of Ronald Fogel ("Fogel Rep.") at 4, attached at Ex. CC. While Dr. Fogel lacks a methodological basis for offering this opinion based on even the most current evidence, as set forth in Defendants' Motion to Exclude General Causation and Labeling Testimony of Ronald Fogel, Dr. Fogel has not even tried to offer the opinion that an express causation warning was required based on the scientific data that existed between seven and fourteen years ago, when Plaintiffs were taking Accutane. To the contrary, his causation opinion is premised, in large part, on literature and other data not available when Plaintiffs were taking Accutane. *See id.* at 2-3.[9]

Finally, Texas's presumption of adequacy is particularly dispositive with respect to this alleged inadequacy. The FDA and its Advisory Committee specifically considered the relationship between Accutane and IBD adverse events and concluded that the most appropriate description of the risk was one of "association," not "causation." Indeed, the FDA – not Defendants – proposed use of the term "associated" to describe the relationship between Accutane and IBD. *See* Ex. EE at ACC 07000449 (listing FDA's proposed IBD warning). The FDA did so because, as it told doctors in its own publication, "[i]t is not yet clear whether isotretinoin *caused* this condition." FDA,

---

9 Even the current literature, such as the Reddy article on which Plaintiffs have heavily relied, indicates that there is only a "possible association" between Accutane and IBD. Deepa Reddy et al., ***Possible Association*** *Between Isotretinoin and Inflammatory Bowel Disease*, 101 *Am. J. of Gastroenterology* 1569, 1572 (2006), attached at Ex. DD (emphasis added). Defendants have expressly warned of such an "association" – without the qualifying "possibly" language – since 1984.

"Adverse Effects with Isotretinoin," 13 *FDA Drug Bulletin* 21, 22 (Nov. 1983), attached at Ex. FF (emphasis added). Because Defendants' statement of "association" was dictated by the FDA, the presumption of adequacy should be conclusive as to this alleged inadequacy.

### B. Complaint: "Temporally" Is Ambiguous

Plaintiffs next focus on the word "temporally" in the pre-2000 label, arguing that it was ambiguous in two regards.

#### 1. "Temporally" Failed to Warn of Latent IBD

Plaintiffs claim that the word "temporally" weakens the warning because doctors might misunderstand the term to mean that IBD may develop only while the patient is taking Accutane, not after the patient has stopped Accutane. *See* Ex. Y (Moshell Dep. III) at 426:9-19; Ex. AA (Blume Dep. II) at 87:14-88:1. This argument suffers two flaws.

First, Plaintiffs offer no evidence for this reading of the word "temporally," which read in context plainly refers to certain case report information Roche had received. The entire sentence in the pre-2000 label states: "Accutane has been temporally associated with inflammatory bowel disease (including regional ileitis) in patients without a prior history of intestinal disorders." Just as Roche's statement that it had seen IBD develop in "patients without a prior history of intestinal disorders" was plainly not intended to suggest Accutane presented no risks for patients ***with*** a prior history, Roche was similarly not intending to disclaim latent IBD by referring to reports where the IBD was "temporally associated" with Accutane use. Moreover, Plaintiffs' labeling expert, Cheryl Blume acknowledged that drug labels often refer to temporal association in describing case reports where causation has not been proven by proper studies. Ex. Z (Blume Dep. III) at 80:5-81:4.

Second, Plaintiffs' complain about a distinction without a difference. Plaintiffs have failed to offer any evidence explaining how inclusion of the word "temporally" could possibly affect prescribing decisions. Regardless of when IBD might occur in relation to Accutane treatment, the plain language of Defendants' warning tells doctors that IBD might occur as a result of Accutane treatment. The risk/benefit calculus is therefore the same under either understanding of the term. Plaintiffs lack any evidence to support the nonsensical argument that they were prepared to use Accutane knowing that they might develop IBD during Accutane use, but they would have decided not to use Accutane if they knew they might instead have a good year before developing IBD.

Indeed, not one of the Plaintiffs' prescribing physicians stopped prescribing Accutane over the amended warning language or for other health-related reasons.[10] That deletion of the word "temporally" from the Accutane label in 2000 has made no difference to Plaintiffs' prescribing doctors refutes Plaintiffs' claim that any ambiguity in the term is relevant to the adequacy of the warning.

**2. "Temporally" Really Means "Temporary"**

Plaintiffs alternatively argue that the word "temporally" is misleading because doctors might confuse "temporal" with "temporary" and therefore assume that IBD is not a permanent condition. Ex. Y (Moshell Dep. III) at 422:5-7. Plaintiffs' experts concede, however, that such an interpretation would be a "misinterpretation." *Id.* at 424:12-25. As Cheryl Blume stated:

---

10 The only prescribing physicians to stop prescribing Accutane have done so for non-health related reasons. Ex. K (Allen Dep.) at 14:16-15:20 (stopped prescribing Accutane due to certification requirements); Ex. L (Wyrick Dep.) at 44:12-45:15 (stopped active practice); Ex. Q (Lyles Dep.) at 53:9-20 (stopped for fear of lawsuits).

Q. Do you understand the difference between the word temporally and the word temporarily?

A. Yes.

Q. Do you understand those to be two separate words?

A. Yes, I understand that.

Q. What's the difference between those two words?

**A. *Temporary means that it is not long – not permanent and temporally, in my understanding, is associated with something else.***

Ex. AA (Blume Dep. II) at 103:13-104:1 (emphasis added). Similarly, Alan Moshell testified that "temporally" means that there is a relationship in time between use of the drug and onset of the adverse event:

Q. And what does that mean *temporally* in the context of a prescribing – its use in prescribing information?

A. That means that whatever effect is being described occurs at a time that the medication is either being taken, or within a time period thereafter that is consistent with the pharmacology of the particular medication.

***Q. Any doubt in your mind about that?***

***A. No.***

Dep. of Alan Moshell (June 15, 2006) ("Moshell Dep. I") at 223:2-15 (emphasis added), attached at Ex. GG.

Plaintiffs' expert Alan Moshell further concedes that doctors already understand based on their medical training that IBD is "a permanent condition." Ex. X (Moshell Dep. II) at 76:17–77:18. Drug manufacturers are not required to give doctors information that is "already known to the medical community." *Hansen v. Baxter Healthcare Corp.*, 764 N.E.2d 35, 42 (Ill. 2002).

For Plaintiffs, then, the potential misunderstanding arises *not* from any ambiguity in the word "temporally" but from an artificial misreading of the label. *See* Ex. Y (Moshell Dep. III) at 424:12-25 (stating that "quick reading" may result in "misinterpretation"). Plaintiffs' purported negligent physician standard cannot create a genuine issue of fact on the adequacy of the manufacturer's warning. *See Morguson*, 857 So. 2d at 801-02 (holding that doctors' negligent failure to heed manufacturer's warnings could not defeat summary judgment on adequacy of warnings). *Cf. In re Diet Drugs*, No. MDL 1203, 2000 WL 876900, at *11-12 (E.D. Pa. June 20, 2000) (holding that the court "can easily preclude . . . the rendering of opinions . . . as to what doctors in general think").

### C. Complaint: The Warning Contains Insufficient Monitoring and Diagnostic Instructions

Plaintiffs' expert witnesses further opine that Defendants should have provided doctors with medical instructions regarding "how and when to diagnose an individual suffering from inflammatory bowel disease," and "how and when to diagnose an individual suffering from autoimmune diseases." In a similar vein, Plaintiffs complain that Roche failed to tell "doctors to have their patients seeks medical treatment if they experience symptomotology that could be related to IBD" and to tell doctors that there are "no tests that can be administered to a person prescribed Accutane that would indicate an individual is developing [IBD]." Expert Rep. of Alan Moshell ("Moshell Rep.") at 5, 7, 9, attached at Ex. HH; Ex. AA (Blume Dep. II) at 391:3-24, 409:7-24. These assertions do not create a genuine issue of fact on the adequacy of the warnings for a number of reasons.

First, it is undisputed that the Accutane IBD warning *does* tell doctors how to monitor for IBD by listing the most commonly occurring symptoms of IBD. Courts have recognized the effectiveness of such instructions. *See, e.g.*, *Sterling Drug*, 370 F.2d at 85 ("If the doctor is properly warned of the possibility of a side effect in some patients, and is advised of the symptoms normally accompanying the side effect, there is an excellent chance that injury to the patient can be avoided."). Indeed, the Florida Supreme Court in *Upjohn Co.* found a warning mentioning the symptoms that led to a hysterectomy adequate as a matter of law, even though the label did not even warn of the ultimate consequence of a hysterectomy. *Upjohn Co.*, 562 So. 2d at 683. The Accutane warnings here not only warn of IBD's main symptoms, but also they warn specifically of IBD and unambiguously tell doctors what to do if their patients experience any of the articulated signs of IBD: "discontinue Accutane immediately."

Second, Plaintiffs' expert admits that a physician is equipped by her medical training to identify gastrointestinal disease generally, and bowel disease specifically, and to refer patients to gastroenterologists when necessary: "[R]ectal bleeding will be recognized by a layman as something related to the gastrointestinal tract, then, certainly, should be recognized by a physician." Ex. X (Moshell Dep. II) at 96:16-19. This concession alone defeats Plaintiffs' attempt to create an issue of fact by alleging that Defendants should have told doctors how to recognize IBD.

Finally, Plaintiffs' assertions once again misunderstand the legal duty owed. A drug label is not a textbook of medicine. Manufacturers have no duty to tell doctors how to practice medicine. They have a duty to warn doctors of the known risks of their drugs. Once the manufacturer warns of those risks, it is the prescribing physician's duty to "use

his comprehensive training and experience in conjunction with his knowledge of the individual patient in determining the suitability of a medication." *Rolen,* 856 S.W.2d at 609 (Tex. App. – Waco 1993); *see also In re Meridia Prods. Liab. Litig.*, 328 F. Supp. 2d 791, 813-14 (N.D. Ohio 2004) ("The law does not mandate that pharmaceutical manufacturers and marketers provide such specific instructions that they leave little room for doctors' reasonable medical judgment. . . . [P]hysicians are well aware of the scope of the risks associated with increased blood pressure and do not need specifics regarding the possible consequences of blood pressure increases."), *aff'd*, 447 F.3d 861 (6th Cir. 2006); *Ziliak*, 324 F.3d at 521 ("[T]he doctor's need to monitor the patient and to consider alternative therapies" is "implicit in the warning."); *Caveny v. Ciba Geigy Corp.*, 818 F. Supp. 1404, 1405 (D. Colo. 1992) (rejecting claim of expert witnesses that warning should have included "a detailed discussion of the potential fatal side effect of aplastic anemia").

Indeed, providing too much information in a drug warning is prohibited due to its negative consequences. The FDA bars provision of excess information because it "limit[s] physician appreciation of potentially far more significant contraindications and side effects." 71 Fed. Reg. 3,922, 3,935 (Jan. 24, 2006). Accordingly, "[w]arnings must be brief and focused to be effective." *Ames*, 431 F. Supp. 2d at 573.[11] Plaintiffs' implicit argument that a prescription drug label should be a comprehensive textbook of internal medicine is patently inconsistent with the standards imposed under both state tort law and FDA regulations.

---

[11] The *Ames* court found the manufacturers' amoxicillin warnings adequate after rejecting as irrelevant comparable expert testimony of Dr. Cheryl Blume – one of Plaintiffs' labeling experts in this case – that the warnings should have contained additional information about the risk of toxic epidermal necrolysis. *See* 431 F. Supp. 2d at 570-73.

Because the additional information that Plaintiffs' experts would include in the label is inconsistent with the applicable legal standard, their allegations do not create a genuine issue of fact on the adequacy of the warning.

* * *

In an attempt to create an issue of fact, product liability plaintiffs can always find expert witnesses willing to testify that additional information could have been added to a drug label or that they would have worded the warning differently. Plaintiffs have attempted to do that here. In so doing, they misunderstand the applicable legal standard. Drug manufacturers must inform doctors of the risks of the drug. They must do so in a way that is clear. And they must do so in a way that is reasonable. Defendants have done that here. Indeed, they have done more – they also warned Accutane patients directly. Defendants' warnings are adequate as a matter of law.

## III. PLAINTIFFS' FRAUD/MISREPRESENTATION AND NEGLIGENCE CLAIMS MUST ALSO BE DISMISSED

Certain Plaintiffs also assert fraud/misrepresentation claims and/or negligence claims.[12] These claims fail for the same reasons as Plaintiffs' failure-to-warn claims.

To show fraud and misrepresentation, Plaintiffs must prove both that Defendants made a false statement or misrepresentation of a material fact and that Plaintiffs relied on that representation. *See Lance v. Wade*, 457 So. 2d 1008, 1010 (Fla. 1984) (stating elements of fraud claim); *Gilchrist Timber Co. v. ITT Rayonier, Inc.*, 696 So. 2d 334, 336 (Fla. 1997) (referring to fraud and intentional misrepresentation interchangeably); *Atlantic Nat'l Bank of Florida v. Vest*, 480 So. 2d 1380, 1331-32 (Fla. App. 2d Dist.

---

12 Some Plaintiffs also assert design defect claims. Those design defect claims are addressed in Roche's distinct Defendants' Motion for Partial Summary Judgment on the Track II IBD Plaintiffs' Design-Defect Claims.

1985) (stating elements of negligent misrepresentation claim). Similarly, to establish a negligence claim, Plaintiffs must prove the breach of a legal duty, which here is the failure to warn. *See Humphreys v. General Motors Corp.*, 839 F. Supp. 822, 829 (N.D. Fla. 1993).

These fraud/misrepresentation and negligence claims are thus nothing more than reformulated failure-to-warn claims. Accordingly, they fail for the same reasons that Plaintiffs' failure-to-warn claims fail. *See In re Norplant Contraceptive Prods. Liab. Litig.*, 955 F. Supp. 700, 709 (E.D. Tex. 1997) (granting summary judgment on all claims because "[t]he gravamen of all of Plaintiffs' causes of action . . . is that Wyeth failed to adequately warn of or disclose the severity of Norplant's side effects"), *aff'd* 165 F.3d 374 (5th Cir. 1999); *Jack v. Glaxo Wellcome, Inc.*, 239 F. Supp. 2d 1308, 1320-22 (N.D. Ga. 2002) (finding defendant entitled to summary judgment under the learned intermediary doctrine on plaintiff's negligence, strict liability and breach of implied warranty claims).

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court grant their motion for summary judgment on all claims.

Respectfully submitted,

/s/ Rafael Cruz-Alvarez
Edward A. Moss
Florida Bar No. 057016
Email: emoss@shb.com
Rafael Cruz-Alvarez
Florida Bar No. 989861
Email: ralvarez@shb.com
Shook, Hardy & Bacon, L.L.P.
Miami Center, Suite 2400
201 South Biscayne Boulevard
Miami, FL 33131-4332
PH: (305) 358-5171
FAX: (305) 358-7470

Michael X. Imbroscio
Paul W. Schmidt
Covington & Burling LLP
1201 Pennsylvania Avenue NW
Washington, D.C. 20004

Kathleen D. Patterson
Orrick, Herrington & Sutcliffe LLP
The Orrick Building
405 Howard St.
San Francisco, California 94105

Dated: April 12, 2007

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on April 12, 2007, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all attorneys of record.

s/Rafael Cruz-Alvarez

# Attachment 1

**C**

Mikell v. Hoffman, LaRoche, Inc.La.App. 1 Cir.,1994.

Court of Appeal of Louisiana,First Circuit.
George L. MIKELL
v.
HOFFMAN-LaROCHE, INC., et al.
**No. 94 CA 0242.**

Dec. 22, 1994.

User of prescription acne medication who suffered from inflammatory bowel disease he alleged was caused by medication brought products liability action against manufacturer alleging failure on part of manufacturer to warn of risks of medication. Manufacturer moved for summary judgment, in the Nineteenth Judicial District Court, Parish of East Baton Rouge, No. 302,563,William H. Brown, J., granted motion. User appealed, and the Court of Appeal, Carter, J., held that actions of manufacturer in sending "Dear Doctor" letter to all physicians in country warning of reports it had received of inflammatory bowel disease as side effect of use of medication discharged manufacturer's duty to warn of risk.

Affirmed.

West Headnotes

**[1] Judgment 228 ⚷178**

228 Judgment
228V On Motion or Summary Proceeding
228k178 k. Nature of Summary Judgment. Most Cited Cases

Motion for summary judgment is procedural device used to avoid full scale trial when there is no genuine factual dispute. LSA-C.C. art. 966.

**[2] Judgment 228 ⚷181(2)**

228 Judgment
228V On Motion or Summary Proceeding
228k181 Grounds for Summary Judgment
228k181(2) k. Absence of Issue of Fact. Most Cited Cases

Fact is material, so that genuine issue regarding fact will preclude summary judgment, if it is essential to plaintiff's cause of action under applicable theory of recovery and without which plaintiff could not prevail. LSA-C.C. art. 966.

**[3] Judgment 228 ⚷181(2)**

228 Judgment
228V On Motion or Summary Proceeding
228k181 Grounds for Summary Judgment
228k181(2) k. Absence of Issue of Fact. Most Cited Cases

"Material facts" are those that potentially insure or preclude recovery, affect litigant's ultimate success, or determine outcome of legal dispute. LSA-C.C. art. 966.

**[4] Judgment 228 ⚷185(2)**

228 Judgment
228V On Motion or Summary Proceeding
228k182 Motion or Other Application
228k185 Evidence in General
228k185(2) k. Presumptions and Burden of Proof. Most Cited Cases

Burden is upon mover for summary judgment to show that no genuine issue of material fact exists, and only when reasonable minds must inevitably conclude that mover is entitled to judgment as matter of law is summary judgment warranted; to satisfy this burden, mover must meet strict standard by showing that it is quite clear as to what truth is and excluding any real doubt as to existence of material fact. LSA-C.C. art. 966.

**[5] Judgment 228 ⚷185(2)**

228 Judgment
228V On Motion or Summary Proceeding
228k182 Motion or Other Application
228k185 Evidence in General
228k185(2) k. Presumptions and Burden of Proof. Most Cited Cases

Court in considering motion for summary judgment must closely scrutinize papers supporting position of mover, while papers of party opposing motion are to be treated indulgently. LSA-C.C. art. 966.

**[6] Judgment 228 ⚷178**

228 Judgment
228V On Motion or Summary Proceeding
228k178 k. Nature of Summary Judgment. Most Cited Cases

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**Judgment 228 ⚿186**

228 Judgment
228V On Motion or Summary Proceeding
228k182 Motion or Other Application
228k186 k. Hearing and Determination. Most Cited Cases

Summary judgments are not favored and should be used cautiously and sparingly, and any reasonable doubt should be resolved against mover. LSA-C.C. art. 966.

**[7] Judgment 228 ⚿186**

228 Judgment
228V On Motion or Summary Proceeding
228k182 Motion or Other Application
228k186 k. Hearing and Determination. Most Cited Cases

In determining whether material facts have in fact been disposed of, any doubt is to be resolved against granting summary judgment and in favor of trial on merits; this is true even if grave doubt exists as to party's ability to establish disputed facts at trial. LSA-C.C. art. 966.

**[8] Judgment 228 ⚿185(2)**

228 Judgment
228V On Motion or Summary Proceeding
228k182 Motion or Other Application
228k185 Evidence in General
228k185(2) k. Presumptions and Burden of Proof. Most Cited Cases

Where trial court is presented with choice of reasonable inferences to be drawn from subsidiary facts contained in affidavits, attached exhibits, and depositions, reasonable inferences must be viewed in light most favorable to party opposing motion for summary judgment. LSA-C.C. art. 966.

**[9] Appeal and Error 30 ⚿893(1)**

30 Appeal and Error
30XVI Review
30XVI(F) Trial De Novo
30k892 Trial De Novo
30k893 Cases Triable in Appellate Court
30k893(1) k. In General. Most Cited Cases

Appellate courts are to review summary judgments de novo under same criteria that govern district court's consideration of whether summary judgment is appropriate. LSA-C.C. art. 966.

**[10] Judgment 228 ⚿181(2)**

228 Judgment
228V On Motion or Summary Proceeding
228k181 Grounds for Summary Judgment
228k181(2) k. Absence of Issue of Fact. Most Cited Cases

Because it is applicable substantive law that determines materiality, whether or not particular fact in dispute is material and will preclude grant of summary judgment can be seen only in light of substantive law applicable to case. LSA-C.C. art. 966.

**[11] Products Liability 313A ⚿46.2**

313A Products Liability
313AI Scope in General
313AI(B) Particular Products, Application to
313Ak46 Health Care and Medical Products
313Ak46.2 k. Drugs in General. Most Cited Cases
(Formerly 313Ak46)

Generally, drug manufacturer has no duty to warn consumer directly of any risks or contraindications associated with its product, and obligation to consumer is fulfilled when prescribing or treating physician is informed of any potential side effects or risks from drugs's use so that they may intelligently decide on its use and advise patient; doctor acts as informed intermediary, and decision to use drug in particular circumstance rests with doctor and patient, not manufacturer.

**[12] Products Liability 313A ⚿46.2**

313A Products Liability
313AI Scope in General
313AI(B) Particular Products, Application to
313Ak46 Health Care and Medical Products
313Ak46.2 k. Drugs in General. Most Cited Cases
(Formerly 313Ak46)

Manufacturer of prescription acne medication which was alleged to have caused inflammatory bowel disease in user had discharged duty to warn of risks, and was not liable for injuries suffered by user, where manufacturer had sent "Dear Doctor" letter to all physicians in country, including prescribing physician, warning that it had received reports of possible side effect of inflammatory bowel disease associated with use of medication.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

*76 Keith D. Jones, Baton Rouge, for plaintiff-appellant, George L. Mikell.
Brent A. Talbot, New Orleans, for defendant-appellee, Hoffman-LaRoche, Inc.

Before LOTTINGER, C.J., and SHORTESS and CARTER, JJ.
CARTER, Judge.
This is an appeal from a trial court judgment granting a motion for summary judgment in favor of a drug manufacturer in a product's liability action.

### *FACTS*

In early March of 1984, plaintiff George L. Mikell sought treatment for acne from Dr. Thomas W. Graves, a dermatologist. Dr. Graves prescribed for plaintiff the prescription medication Accutane, which is manufactured by Hoffman-LaRoche, Inc. (Hoffman). The administration of Accutane was discontinued on several occasions by Dr. Graves because of various side effects experienced by plaintiff. Plaintiff last took Accutane in November of 1984. Thereafter, plaintiff suffered gastrointestinal problems and was diagnosed with inflammatory bowel disease, more particularly, ulcerative proctitis.

On June 4, 1986, plaintiff filed suit against Hoffman, alleging that Accutane is an unreasonably dangerous product, that Hoffman *77 failed to disclose the risk of developing ulcerative proctitis from Accutane use, and that Hoffman failed to give adequate warnings regarding the use of Accutane.[FN1] No further action was taken in the case until nearly five years later when, on February 21, 1992, Hoffman filed a motion to compel responses to certain interrogatories which had been served upon plaintiff on January 26, 1987.

FN1. Plaintiff also named as defendants Dr. Thomas W. Graves and his medical corporation. On September 16, 1986, Hoffman filed dilatory exceptions pleading the objections of improper joinder and prematurity. Subsequent thereto, on June 10, 1987, plaintiff filed a motion and order for partial dismissal without prejudice, dismissing Dr. Graves and his medical corporation and reserving all rights to proceed against Hoffman. The order dismissing these two defendants was signed by the trial judge on June 10, 1987.

On March 6, 1992, Hoffman filed an answer generally denying plaintiff's allegations and asserting that (1) plaintiff was contributorily negligent; (2) that there was an intervening cause; (3) that Hoffman had no duty to warn plaintiff directly; (4) that warnings are required to be made to the physician/health care provider who acts as a "learned intermediary" in deciding on the use/administration of such medication; (5) that its methods used in the preparation of Accutane were in conformity with the generally recognized state-of-the-art at the time of preparation; and (6) that Accutane, as prepared and provided by Hoffman, has been approved by the appropriate federal agencies.

On September 29, 1992, Hoffman filed a motion for summary judgment, claiming that there were no genuine issues of material fact in dispute and that it was entitled to judgment as a matter of law. In its memorandum in support of the motion for summary judgment, Hoffman asserted that plaintiff's condition was not caused by the use of Accutane and that Hoffman had provided an adequate warning by informing a learned intermediary (Dr. Graves) of the risks associated with the use of Accutane. Attached to the motion for summary judgment were the following documents:
(1) Affidavit of Dr. Graves;
(2) Dr. Graves's notes for the period of November 1984 through June 1985;
(3) A colonoscopy report from Dr. Barry Scott;
(4) A copy of the 1992 Physician's Desk Reference with regard to certain drugs which had been taken by plaintiff during the same period in which he had taken Accutane;
(5) Other medical records regarding plaintiff's treatment.

Dr. Graves's affidavit stated that plaintiff's last use of Accutane was on November 15, 1984. An attached report of a Barium Enema study and a proctoscopic exam performed on November 27, 1984, revealed normal results. The affidavit also stated the following: (1) that from January 8, 1985, through April 23, 1985, plaintiff had no gastrointestinal complaints or symptoms; (2) that, during the period of January of 1985 through April 23, 1985, plaintiff was prescribed medications other than Accutane; (3) that on or about August 1, 1985, plaintiff was taking Azulfidine for treatment of colitis; (4) that the attached medical records reflected that plaintiff's complaints at the time of the colonoscopy on June 26, 1985, consisted of persistent diarrhea with blood in

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

the stool and pus cells; (5) that, if plaintiff developed colitis and/or ulcerative proctitis in the summer of 1985, it was not causally related to the ingestion of Accutane prior to or on November 15, 1984, as supported by the attached medical records; (6) that he is familiar with Accutane and has treated patients prior to and subsequent to plaintiff with Accutane; and (7) that the contraindications, warnings, precautions, and adverse reaction information which he received accompanying Accutane were adequate for his weighing of the risks against the benefits in prescribing Accutane for plaintiff.

In opposition to Hoffman's motion for summary judgment, plaintiff filed an affidavit, stating that, when he was first prescribed Accutane, he was provided with a brochure which did not disclose the risk of inflammatory bowel disease. Plaintiff also stated that, after he discontinued use of Accutane, he obtained a copy of a patient brochure, which *78 was released sometime after he had received the first brochure, disclosing risks of "severe stomach pain, diarrhea, [and] rectal bleeding." Copies of both brochures were also attached to plaintiff's memorandum in opposition to the motion for summary judgment.

On November 13, 1992, a hearing was held on Hoffman's motion for summary judgment. After argument of counsel, the trial judge denied the motion, but stated that the motion could be re-urged with additional evidence concerning Hoffman's warnings of the association between Accutane and inflammatory bowel disease. On June 16, 1993, Hoffman filed a supplemental motion for summary judgment. Attached to the motion were the affidavit of Mack R. Mericle, Group Director in the Department of Drug Regulatory Affairs for Hoffman, together with various attachments, and the affidavit of Dr. Graves.

In his affidavit, Mericle stated that he is familiar with warnings and other information disseminated by Hoffman regarding Accutane. According to Mericle, on August 25, 1983, Hoffman mailed to every physician in the United States a "Dear Doctor" letter, advising all physicians, among other things, that it had received reports of inflammatory bowel disease in association with the administration of Accutane and that, attached to the letter, was a revised package insert which reflected the fact that Hoffman had received such reports. The August 1983 letter and package insert were attached to Mericle's affidavit as Exhibit A. Mericle indicated that, in February of 1984, the annual Physicians' Desk Reference ("PDR") was distributed to physicians in the United States and that the 1984 PDR entry for Accutane includes a warning regarding the association between Accutane and inflammatory bowel disease. The 1984 PDR entry for Accutane was attached to Mericle's affidavit as Exhibit B.

In his affidavit, Dr. Graves stated the following: (1) that he is a physician licensed to practice medicine in Louisiana, specializing in dermatology; (2) that he prescribed Accutane to plaintiff for the treatment of acne beginning on March 16, 1984; (3) that, on or before March 16, 1984, he was aware of the 1984 PDR and the product information on Accutane contained therein; (4) that he was aware of the 1984 package insert, as published on page 1617 in the 1984 PDR, which states: "The following reactions have been reported in less than 1% of patients and may bear no relationship to therapy ... inflammatory bowel disease (including regional ileitis), mild gastrointestinal bleeding ..."; (5) that he was aware that inflammatory bowel disease includes colitis and/or ulcerative proctitis; and (6) that he used all of this information in assessing the risks of prescribing Accutane to plaintiff in March of 1984 and that the contraindications, warnings, precautions, and the adverse reaction information provided to him adequately apprised him of the drug's risks and benefits.

On October 1, 1993, a hearing was held on the second motion for summary judgment. After considering the law, evidence, and argument of counsel, in his oral reasons for judgment, the trial judge stated:

Of course, as I appreciate it, the duty of the drug company is not to warn patients but to warn the doctors so that they can make a decision as to whether or not they should or should not use a particular drug.

I think the affidavit is sufficient.

Accordingly, the trial court granted Hoffman's motion for summary judgment and dismissed, with prejudice, plaintiff's claims against Hoffman.

From this adverse judgment, plaintiff appealed, assigning the following specifications of error:

1. The trial court erred in finding that summary judgment was appropriate under the facts presented.
2. The trial court erred in finding that there was no issue of material fact as to the warnings given, as perceived by plaintiff's treating physician, Dr. Graves.
3. The trial court erred in granting summary

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

judgment to the defendant on the basis of an affidavit by the plaintiff's former treating physician while denying plaintiff an opportunity to take the physician's deposition.

***79 SUMMARY JUDGMENT**

[1] A motion for summary judgment is a procedural device used to avoid a full-scale trial when there is no genuine factual dispute. *Ouachita National Bank in Monroe v. Gulf States Land & Development, Inc.*, 579 So.2d 1115, 1120 (La.App. 2nd Cir.), *writ denied*, 587 So.2d 695 (La.1991). The motion should be granted only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. LSA-C.C. art. 966; *Thompson v. South Central Bell Telephone Company*, 411 So.2d 26, 27 (La.1982); *Legros v. Norcen Exploration, Inc.*, 583 So.2d 859, 860 (La.App. 1st Cir.), *writs denied*, 588 So.2d 101, 109 (La.1991).

[2][3] A fact is material if it is essential to the plaintiff's cause of action under the applicable theory of recovery and without which the plaintiff could not prevail. Material facts are those that potentially insure or preclude recovery, affect the litigant's ultimate success, or determine the outcome of a legal dispute. *Penalber v. Blount*, 550 So.2d 577, 583 (La.1989).

[4][5] The burden is upon the mover for summary judgment to show that no genuine issue of material fact exists, and only when reasonable minds must inevitably conclude that mover is entitled to judgment as a matter of law is summary judgment warranted. *Robertson v. Our Lady of Lake Regional Medical Center*, 574 So.2d 381, 383-84 (La.App. 1st Cir.1990), *writ denied*, 573 So.2d 1136 (La.1991). To satisfy this burden, the mover must meet a strict standard by showing that it is quite clear as to what the truth is and excludes any real doubt as to the existence of material fact. *Ouachita National Bank in Monroe v. Gulf States Land & Development, Inc.*, 579 So.2d at 1120. The court must closely scrutinize the papers supporting the position of the mover, while the papers of the party opposing the motion are to be treated indulgently. *Ortego v. Ortego*, 425 So.2d 1292, 1297 (La.App. 3rd Cir.1982), *writ denied*, 429 So.2d 147 (La.1983).

[6][7][8] Summary judgments are not favored and should be used cautiously and sparingly, and any reasonable doubt should be resolved against the mover. *Penalber v. Blount*, 550 So.2d at 583; *Hollis v. City of Baton Rouge/Parish of East Baton Rouge*, 593 So.2d 388, 389 (La.App. 1st Cir.1991). In determining whether material facts have in fact been disposed of, any doubt is to be resolved against granting the summary judgment and in favor of trial on the merits. *Sanders v. Hercules Sheet Metal, Inc.*, 385 So.2d 772, 775 (La.1980). This is true even if grave doubt exists as to a party's ability to establish disputed facts at trial. *Equipment, Inc. v. Anderson Petroleum, Inc.*, 471 So.2d 1068, 1070-1071 (La.App. 3rd Cir.1985). Where the trial court is presented with a choice of reasonable inferences to be drawn from the subsidiary facts contained in the affidavits, attached exhibits, and depositions, the reasonable inferences must be viewed in the light most favorable to the party opposing the motion. *Jones v. Briley*, 593 So.2d 391, 393 (La.App. 1st Cir.1991).

[9][10] Appellate courts are to review summary judgments *de novo* under the same criteria that govern the district court's consideration of whether summary judgment is appropriate. *Schroeder v. Board of Supervisors of Louisiana State University*, 591 So.2d 342, 345 (La.1991). Because it is the applicable substantive law that determines materiality, whether or not a particular fact in dispute is material can be seen only in light of the substantive law applicable to the case. *Sun Belt Constructors, Division of MCC Constructors, Inc. v. T & R Dragline Service, Inc.*, 527 So.2d 350, 352 (La.App. 5th Cir.1988).

***DUTY TO WARN***

[11] Generally, a drug manufacturer has no duty to warn the consumer directly of any risks or contraindications associated with its product. The obligation to the consumer is fulfilled when the prescribing or treating physician is informed of any potential side effects or risks from the drug's use so that they may intelligently decide on its use and advise the patient. *Rhoto v. Ribando*, 504 So.2d 1119, 1123 (La.App. 5th Cir.), *writ* ***80** *denied*, 506 So.2d 1225 (La.1987); *Kinney v. Hutchinson*, 468 So.2d 714, 717 (La.App. 5th Cir.), *writ denied*, 472 So.2d 35 (La.1985); *Cobb v. Syntex Laboratories, Inc.*, 444 So.2d 203, 205 (La.App. 1st Cir.1983). The doctor acts as an informed intermediary, and the decision to use the drug in a particular circumstance rests with the doctor and the patient, not the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

manufacturer. Rhoto v. Ribando, 504 So.2d at 1123; Kinney v. Hutchinson, 468 So.2d at 717-18; *Cobb v. Syntex Laboratories, Inc.*, 444 So.2d at 205.

In *Cobb v. Syntex Laboratories, Inc.*, 444 So.2d at 205-206, in affidavits to support a motion for summary judgment, the plaintiff's physicians stated that they had received and reviewed the material supplied by the manufacturer of birth control pills and that they considered the warnings adequate. The trial court concluded that, under those circumstances, the plaintiff's physicians were sufficiently warned of the side effects and risks of the drug. Accordingly, the trial court determined that the defendant drug manufacturer had discharged its obligation. In affirming the trial court judgment, this court determined that the record supported the trial judge's conclusion that the physicians had been adequately warned by the manufacturer and that the manufacturer breached no duty in that respect.

[12] In the instant case, we have thoroughly reviewed the affidavits and exhibits thereto of Dr. Graves and Mericle. The "Dear Doctor" letter advised that "[n]ew clinical adverse reaction information has been added to this section [Adverse Reactions Section], including the occurrence of ... inflammatory bowel disease...." The PDR clearly stated that "inflammatory bowel disease (including regional ileitis)" was a possible contraindication of Accutane usage. Moreover, Dr. Graves clearly stated that he was aware of the risk of inflammatory bowel disease with the administration of Accutane. The trial court concluded, and we agree, that the evidence in support of the motion for summary judgment established that, prior to prescribing Accutane for plaintiff, Dr. Graves had been informed by Hoffman of the possible side effect of inflammatory bowel disease associated with the use of Accutane. As such, Hoffman breached no duty in this respect. Therefore, we find that the motion for summary judgment was properly granted.

***CONCLUSION***

For the foregoing reasons, the judgment of the trial court, granting Hoffman's motion for summary judgment and dismissing plaintiff's claims against Hoffman, with prejudice, is affirmed. Plaintiff is cast for all costs on appeal.

**AFFIRMED.**

La.App. 1 Cir.,1994.
Mikell v. Hoffman-Laroche, Inc.

649 So.2d 75, 94 0242 (La.App. 1 Cir. 12/22/94)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.