# EXHIBIT 2

```
                                                                    1
 1   - - - - - - - - - - - -    )SUPERIOR COURT OF NEW
                                )NEW JERSEY
 2                              )LAW DIVISION:
                                )ATLANTIC COUNTY
 3                              )
     IN RE:ACCUTANE LITIGATION  )     CASE NO. 271
 4                              )
                                )       CIVIL ACTION
 5                              )
                                )
 6                              )  ACCUTANE® LITIGATION
     - - - - - - - - - - - - -
 7

 8      (cross captions appear on the following pages)

 9

10   Videotaped Deposition of Sunanda Kane, M.D., M.S.P.H.

11                          Volume I

12

13                                   Rochester, Minnesota

14                                   Tuesday, September 29, 2009

15                        1:35 p.m.

16

17

18   IN THE DISTRICT COURT OF DOUGLAS COUNTY, NEBRASKA
     - - - - - - - - - - - - - -
19   AIMEE FREEMAN,                )  DOC. 964   PAGE
          Plaintiff,                )
20                                  )
     vs.                            )
21   HOFFMANN-LA ROCHE, INC., A     )
     Corporation, and ROCHE         )
22   LABORATORIES, INC., A          )
     Corporation,                   )
23                                  )
          Defendants.               )
24   - - - - - - - - - - - - - -

25
```

**Page 2**

```
         IN THE CIRCUIT COURT
         THIRD JUDICIAL CIRCUIT
         MADISON COUNTY, ILLINOIS
JASON CHRISTOPHER PEIPERT, )
                           )
     Plaintiff,  ) Cause No. 03-L-2040
                           )
     vs.                   )
                           )
DR. DANIEL GORAN, HOFFMANN-)
LA ROCHE, INC., and ROCHE  )
LABORATORIES, INC.,        )
                           )
     Defendants.           )
-------------

         STATE OF ILLINOIS
   CIRCUIT COURT OF THE ELEVENTH JUDICIAL
     CIRCUIT COUNTY OF MCLEAN
-------------
DAVID MADDEN,              )
                           ) No. 04 L 120
     Plaintiff,            ) Civil Action
                           )
     vs.                   )
                           )
THOMAS BRANDER, and        )
ASSOCIATES IN DERMATOLOGY, )
S.C.,                      )
                           )
     and                   )
                           )
ROCHE LABORATORIES, INC.,  )
     Defendants.           )
-------------

-----------)SUPERIOR COURT OF NEW
           )NEW JERSEY
           )LAW DIVISION:
           )ATLANTIC COUNTY
           )
IN RE:ISOTRETINOIN  )DOCKET NO. ATL-L-1321-09
           )
           )CIVIL ACTION
-----------)
           )
           )
```

**Page 3**

```
                           )
                           )
                           )
                           )
-------------

-------------
JENNIFER BARHOUM,    )SUPERIOR COURT OF NEW JERSEY
                     )LAW DIVISION
     Plaintiff,      )ESSEX COUNTY
                     )
     v.              )DOCKET NO: ESX-L-7300-06 MT
                     )
BARR PHARMACEUTICALS, INC.)
and BARR LABORATORIES,   )
INC.,                )
                     )
     Defendants.     )
-------------

     Videotaped deposition of Sunanda V. Kane, M.D.,
M.S.P.H., taken September 29, 2009, commencing at 1:35
p.m., at the Mayo Clinic, 200 1st Street S.W., Rochester,
Minnesota, before Dawn Workman Bounds, Certified
Shorthand Reporter and Notary Public of and for the State
of Minnesota.

               **********
               APPEARANCES
On Behalf of the Plaintiffs:
     Mr. Michael D. Hook
     Hook & Bolton, P.A.
     Suite 22
     3298 Summit Boulevard
     Pensacola, Florida 32503-1599
     850-433-0809
```

**Page 4**

On Behalf of Hoffamann-La Roche, Inc. and Roche
Laboratories, Inc.:
  Ms. Michelle M. Bufano
  Gibbons, P.C.
  One Gateway Center
  Newark, New Jersey 07102-5310
  973-596-4679
  mbufano@gibbonslaw.com

On Behalf of the Defendant Barr Pharmaceuticals,
L.L.C. and Barr Laboratories, Inc.:
  Ms. Jeanette Hargreaves
  Ulmer Berne, L.L.P.
  Suite 2800
  600 Vine Street
  Cincinnati, Ohio 45202-2409
  513-698-5110
  jhargreaves@ulmer.com

On Behalf of Mylan:
  Mr. Joshua Siebert
  Pietragalio Gordon Alfano Bosick & Raspanti,
  L.L.P.
  38th Floor
  One Oxford Centre
  Pittsburgh, Pennsylvia 15219
  (412) 263-4397
  js@pietragalio.com

On Behalf of Thomas Brander and Associates in
Dermatology:
  Mr. Christopher L. Nyweide
  Livingston, Barger, Brandt & Schroeder
  Suite 400
  115 W. Jefferson Street
  Bloomington, Illinois 61702-3457
  309-828-5281
  cnyweide@lbbs.com

On Behalf of Ranbaxy, Inc.; Ranbaxy
Pharmaceuticals, Inc.; and Ranbaxy Laboratories,
Inc.:
  Mr. Paul M. Da Costa
  Duane Morris, L.L.P.

**Page 5**

  744 Broad Street
  Newark, New Jersey 07102-3889
  972-424-2047
  pmdacosta@duanemorris.com

On Behalf of Mayo Clinic and Sunanda V. Kane,
M.D., M.S.P.H:
  Mr. Joseph M. Colaiano
  Mayo Foundation
  200 First Street SW
  Rochester, Minnesota 55905
  507-284-4214
  colaiano.joseph@mayo.edu


ALSO PRESENT:
  Mr. Matt Stern, Videographer

## Page 6

INDEX
PAGE
WITNESS: SUNANDA KANE, M.D., M.S.P.H.

EXAMINATION BY
Ms. Bufano .................. 9
EXAMINATION BY
Ms. Hargreaves ............... 76

EXAMINATION BY
Mr. Da Costa ................. 77
EXAMINATION BY
Mr. Hook .................... 80

EXAMINATION BY
Ms. Bufano .................. 99

EXHIBITS MARKED/REFERRED TO
Exhibit 1: Notice, Accutane Litigation, Case
    No. 271 ............. 9

Exhibit 2: Cross-Notice, Freeman v. Hoffmann-La
    Roche, et al .......... 9
Exhibit 3: Cross-Notice, Peipert v. Goran,
    et al. ............. 10

Exhibit 4: Cross-Notice, Madden v. Brander,
    et al. ............. 10
Exhibit 5: Cross-Notice, In Re: Isotretinoin   10
Exhibit 6: Confidentiality Agreement..... 12
Exhibit 7: Kane Curriculum Vitae ...... 14
Exhibit 8: Abstract, Lack of Association Between
    Isotretinoin and the Development of
    IBD ............... 21
Exhibit 9: Publications, Bates D. Reddy - Ex. 2 -

## Page 7

Ex. 12 - Bates 00001-00011 .... 24
Exhibit 10: 8/12/03 Stepper letter to Sands, Bates
    No. SANDS 2009-0043-0051 ..... 32

Exhibit 11: Article, Possible Association Between
    Isotretinoin and Inflammatory Bowel
    Disease ............. 36

Exhibit 12: Article, A method for estimating the
    probability of adverse drug
    reactions ............ 41

Exhibit 13: Bates SIEGEL-2009 00217-00426 ... 46

Exhibit 14: Bates SIEGEL-2009 00239-00240 and
    00551 ............... 50
Exhibit 15: Bates SIEGEL-2009 00244-00245 and
    00554 ............... 52

Exhibit 16: Bates SIEGEL-2009 00294-00295 and
    00576 ............... 52
Exhibit 17: Bates SIEGEL-2009 00271-00272 and
    00565 ............... 57

Exhibit 18: Bates SIEGEL-2009 00607-00609 and
    00662 ............... 59
Exhibit 19: Bates SIEGEL-2009 00653 and 00685. 61
Exhibit 20: Bates SIEGEL-2009 00219-00220 and
    00541 ............... 62

Exhibit 21: Bates SIEGEL-2009 00273-00274 and
    00566 ............... 63
Exhibit 22: Bates SIEGEL-2009 00284-00285 and
    00571 ............... 65

Exhibit 23: Bates SIEGEL-2009 00715-360 through
    363 ................ 70
Exhibit 24: Bates SIEGEL-2009 00715-359 .... 72
Exhibit 25: Bates S.KANE 0552933-0552934 .... 100

## Page 8

PROCEEDINGS
(Videotape No. 1.)
THE VIDEOGRAPHER: My name is Matt Stern. I'm the videographer. Today's date is September 29, 2009. The time is approximately 1:35. This deposition is being held at the Mayo Clinic legal department in Rochester, Minnesota in the case In Re: Accutane. The name of the witness is Dr. Sunanda Kane. Will counsel identify themselves for the record.
    MR. HOOK: Michael Hook, attorney for the plaintiffs.
    MS. BUFANO: Michelle Bufano, Gibbons, P.C., attorney for Hoffmann-La Roche, Inc. and Roche Laboratories, Inc.
    MS. HARGREAVES: Jeanette Hargreaves, attorney for Barr Pharmaceuticals, L.L.C. and Barr Laboratories, Inc.
    MR. SIEBERT: Joshua Siebert for the Mylan defendants.
    MR. NYWEIDE: Christopher Nyweide for Dr. Thomas Brander.
    MR. DA COSTA: Paul Da Costa from the firm of Duane Morris on behalf of the Ranbaxy defendants.
    MR. COLAIANO: Joe Colaiano, Mayo Clinic legal department here for Dr. Kane.

## Page 9

THE VIDEOGRAPHER: Would the court reporter please swear in the witness.
    SUNANDA KANE, M.D.,
having been first duly sworn, testified as follows:
    EXAMINATION
BY MS. BUFANO:
    Q. Dr. Kane, my name is Michelle Bufano. I'm an attorney. I'm with Gibbons, and I represent Defendant Hoffmann-LaRoche, Inc. and Roche Laboratories, Inc. in a mass tort litigation in New Jersey, entitled In Re: Accutane Litigation.
    MS. BUFANO: I have a few housekeeping matters to take care of before we start questioning. The first couple are that I'd like to mark some deposition notices in this case. This deposition was noticed in the In Re: Accutane Litigation in New Jersey, and I'm going to mark that as Kane De Bene Esse 1.
    (Exhibit No. 1 marked.)
    MS. BUFANO: It was cross-noticed in the case of Aimee Freeman versus Hoffmann-LaRoche, Inc., in the District Court of Douglas County, Nebraska. I'm marking that as Kane De Bene Esse 2.
    (Exhibit No. 2 marked.)
    MS. BUFANO: It was also cross-noticed in the case of Jason Christopher Peipert versus Daniel Goren

Page 86

```
 1    Q. Yeah.
 2         MR. NYWEIDE: Would you recognize my
 3  continuing objection.
 4         MR. HOOK: I do.
 5         MR. DA COSTA: I join in the objection.
 6         MR. SIEBERT: I join as well.
 7         MS. BUFANO: I join as well.
 8         MS. HARGREAVES: I join as well.
 9    Q. Go ahead, Doctor.
10    A. Okay. Now, in that abstract, other than
11  Dr. Reddy, did you have any help from any of your
12  colleagues or any other outside source?
13    Q. Okay. What was your response?
14    A. Not directly, but as my mentor, I would have --
15  I would have discussed it with Dr. Hanauer.
16    Q. Okay. Now, let me you ask this question: In
17  connection with the abstract that you were questioned
18  about today, that was prepared in 2004, did you discuss
19  the abstract with your mentor Dr. Stephen Hanauer?
20    A. Yes, but he did not review it and give
21  substantial input.
22    Q. Okay. But you did discuss it with him?
23    A. Yes.
24    Q. Now, did Dr. Hanauer tell you at the time you
25  were working on that abstract, in 2003, 2004, that he was
```

Page 87

```
 1  a consultant for Roche?
 2         MS. BUFANO: Objection, form.
 3         MR. DA COSTA: Join.
 4         MR. SIEBERT: Join.
 5    A. Sometime in our relationship, between 1996 and
 6  2007, he told me he was a consultant for Roche.
 7    Q. Okay. Do you recall testifying earlier, back in
 8  your May deposition, that that conversation actually took
 9  place after you had already published not the abstract,
10  but the article?
11    A. Yes.
12         MS. BUFANO: Objection.
13         MR NYWEIDE: Improper cross.
14    Q. So let me ask you.
15         MR. DA COSTA: Join.
16         MS. HARGREAVES: Join.
17         MR. SIEBERT: Join.
18         MR. HOOK: One objection is enough; okay,
19  otherwise we're not going to be able to get this out of
20  the video. And this is going to be viewed at the trial,
21  so one objection is enough, okay?
22         MR. SIEBERT: Just as long as you recognize
23  it for all of us.
24         MS. BUFANO: Yes.
25         MR. HOOK: Yes, I recognize that.
```

Page 88

```
 1    Q. So let's go back.
 2         Doctor, you just made -- gave a statement
 3  that at some point in time in your relationship with
 4  Dr. Hanauer, he -- he informed you that he was a
 5  consultant for Roche, correct?
 6    A. Correct.
 7    Q. Did that conversation that you had with
 8  Dr. Hanauer, in which he informed you that he was a
 9  consultant for Roche, take place after you had already
10  published the peer reviewed article that we've been
11  discussing today that was published in 2006?
12    A. I don't recall.
13    Q. Okay. Let me show you your deposition and see
14  if this helps refresh your memory.
15    A. Okay.
16    Q. Please review pages 24 and 25.
17         MS. BUFANO: Objection.
18         MR. NYWEIDE: I'm going to object to this
19  as improper cross and improper examination.
20         MS. BUFANO: And I'm going to join in.
21         I think we all are entitled to state our
22  objections on the record and not be presumed to join in a
23  particular objection.
24         MR. HOOK: That's fine. Any objection not
25  stated on the record I'll deem to be waived, because I
```

Page 89

```
 1  was agreeing to allow -- allow it, but that's okay. So I
 2  accept what you just represented, so if you have an
 3  objection, state it.
 4         MS. HARGREAVES: Going forward.
 5         MR. HOOK: Going forward.
 6         MR. DA COSTA: I object as well.
 7         MS. HARGREAVES: I object too.
 8         MS. BUFANO: Me too.
 9    Q. Okay. Now let's go to the question.
10         You've now had a chance to look at your
11  deposition. Were you -- does that deposition help
12  refresh your memory --
13    A. Yes.
14    Q. -- as to when Dr. Hanauer told you he was a
15  Roche consultant?
16    A. Yes.
17    Q. When did Dr. Hanauer tell you that he was a
18  Roche consultant in relationship to your publication of
19  the article in 2006?
20    A. After.
21    Q. After it was published? Is that a yes?
22    A. Yes.
23    Q. Thank you. Up until the time that Dr. Hanauer
24  told you he was a Roche consultant, did he ever tell you
25  that it was his opinion that Accutane triggers
```

## Page 90

1  inflammatory bowel disease?
2       MS. BUFANO: Objection, foundation.
3       MR. DA COSTA: Join.
4       MR. NYWEIDE: Join.
5       MR. HOOK: What's the foundation? If
6  you're going to object, I'm entitled to -- what's the
7  foundation?
8       MS. BUFANO: The founda --
9       MR. HOOK: The man just testified to that
10  last week. What's the foundation?
11       MS. BUFANO: She doesn't know that that's
12  what he testified to.
13       MS. HARGREAVES: You have to make a
14  foundation in a deposition.
15       MS. BUFANO: Yeah.
16       MR. HOOK: I'm -- this is a De Bene Esse
17  deposition, Ms. Hargreaves. I'm entitle -- if you have
18  an objection, I'm entitled to find out what the basis of
19  it is, so I can correct it if there is a proper --
20  improper foundation.
21       MR. NYWEIDE: Join in the stated objection.
22       MS. HARGREAVES: I join in the objection.
23       MR. HOOK: Nobody's willing to tell me --
24       MS. BUFANO: I told you what it was. It's
25  that you didn't establish the foundation here. You may

## Page 91

1  have established last week, but you haven't established
2  it here.
3       Q. Okay. My question was: Did he ever tell you
4  that?
5            We can go back. At any point in time, up
6  to the -- up until the time Dr. Hanauer told you he was a
7  consultant for Roche, did you ever tell you it was his
8  opinion that Accutane triggers inflammatory bowel
9  disease?
10       A. No.
11       Q. Did he ever tell you at any point in time, up
12  until he conveyed to you that he was a Roche consultant,
13  that it was his opinion that Accutane aggravates
14  inflammatory bowel disease?
15       A. I don't recall.
16       Q. At any point in time, up until when Dr. Hanauer
17  disclosed to you he was a Roche consultant, did he ever
18  tell you that it was his opinion that Accutane has an
19  effect of the epithelial lining and that that is more
20  than just a mere association?
21       A. I don't recall us ever talking about epithelial
22  linings in our discussions of Accutane.
23       Q. At any point in time, did Dr. Hanauer ever tell
24  you, up until the time he disclosed to you he was a Roche
25  consultant, that Accutane has a direct cause or direct

## Page 92

1  impact on the epithelial lining within the
2  gastrointestinal tract and that it is more than just a
3  mere association?
4       A. I don't recall us ever talking about epithelial
5  damage and Accutane.
6       Q. At any point in time, up until when Dr. Hanauer
7  disclosed to you that he was a Roche consultant, did
8  Dr. Hanauer ever tell you that Accutane can cause
9  erosions in the lining cells of the digestive tract?
10       A. Not that I recall.
11       Q. Now, we talked a little bit about the 2004
12  abstract.
13       A. Uh-huh.
14       Q. Let me talk to you about the 2006 article that
15  was published.
16            You -- you made your best efforts at that
17  time to look at this issue and to create a paper that
18  would be peer reviewed, and people could understand what
19  your findings were, correct?
20       A. Correct.
21       Q. And prior to the publication of the article,
22  while it was in manuscript form, did you provide a copy
23  of that manuscript to Dr. Hanauer?
24       A. He had a copy. I don't recall if it was me that
25  sent it to him or one of the other authors.

## Page 93

1       Q. Okay. Let me show you an e-mail that's in the
2  Reddy exhibit. And it's pages --
3       MR. COLAIANO: Exhibit 9.
4       Q. That's Exhibit 9. Actually, if you look at the
5  bottom, it's on page 00082. It appears to be an e-mail,
6  dated January 10, 2006, from you to Dr. Siegel,
7  Dr. Sands, and Dr. Reddy.
8            Do you see that?
9       MR. DA COSTA: Objection, improper use of a
10  document to refresh your recollection.
11       A. Okay. What was the question? I'm sorry.
12       Q. Do you see this -- this e-mail?
13       A. Yes.
14       Q. Okay. Is that an e-mail from you to your
15  co-authors on the 2006 article?
16       A. Yes.
17       Q. Would you read what you told your co-authors on
18  January the 10th, 2006, please.
19       A. Corey, I shared our manuscript with Dr. Hanauer,
20  as he is currently defending a dermatologist who
21  prescribed Accutane to a young man who developed Crohn's
22  disease. Hanauer is concerned about the language in our
23  last paragraph, as we use the term "probably caused" and
24  then use the word "association" twice later on in the
25  same paragraph. His point was that we have such limited

### Page 94

1  data regarding any of the cases, that using the word
2  "cause" could create a lot of problems in the future.
3  Thoughts?
4      Q. And then that's your name, Susie?
5      A. Susie, yes.
6      Q. Is that -- are you able to tell us now whether
7  or not you shared a copy of the manuscript of the article
8  prior to its publication with Dr. Hanauer?
9      A. I --
10         MR. DA COSTA: Objection.
11         MS. BUFANO: Join.
12     A. I must have based on that e-mail. I just don't
13 recall doing it.
14     Q. Okay. And was the change made with the term
15 "probably caused" taken out?
16     A. I believe so, yes.
17     Q. And the word "probably caused" was replaced
18 with -- excuse me.
19         The words "probably caused" was replaced
20 with the words "possible precipitant"?
21     A. Yes.
22     Q. Now, in terms of the article itself, the
23 selection of the Naranjo scoring method, was that
24 something in which you relied upon your co-authors,
25 Dr. Siegel's -- Dr. Siegel and Dr. Sands in selecting?

### Page 95

1      A. Yes.
2      Q. And just in terms of the medical community or
3  the seniority on the project, would -- would Dr. Sands
4  have had the final say in terms of the article in terms
5  of assessing the scoring that Ms. Bufano asked you about?
6      A. Dr. Sands served as the arbitrator for any
7  discrepancies between me and Dr. Siegel.
8      Q. Okay. So you would -- you scored cases one way.
9  Dr. Siegel scored cases his way. And if the two of you
10 disagreed or couldn't reach a conclusion, then it was up
11 to Dr. Sands to make the decision in that regard?
12     A. Correct.
13     Q. And why -- why was Dr. Sands selected to be the
14 arbitrator?
15     A. Because of his experience and seniority in the
16 field of inflammatory bowel disease.
17     Q. Now, you left the University of Chicago in 2007?
18     A. Correct.
19     Q. And I -- I believe you've never talked to
20 Dr. Hanauer since you left the University of Chicago in
21 2007 about the issue of Accutane and inflammatory bowel
22 disease; is that correct?
23     A. Since leaving the university, correct.
24     Q. And, Doctor, in one of your original drafts of
25 either the abstract or the manuscript, there was

### Page 96

reference to another drug manufactured by Roche called
Etretinate.
        Do you recall that?
        MS. BUFANO: Object to the form of the
question only as to whether or not it was in the abstract
or in the article.
    Q. You were --
    A. So the --
    Q. Go ahead.
    A. That other drug was in one of our drafts of the
manuscript, not the abstract.
    Q. Right. And in -- now, in the manuscript, it
indicated in the original draft that Etretinate had been
implicated in the onset of inflammatory bowel disease.
        Do you recall that?
    A. No, but it's probably there.
    Q. Okay. Do you know what the chemical breakdown
is for the -- for the name Etretinate?
        MS. BUFANO: Objection. She's not an
expert.
        MR. DA COSTA: Same objection.
        MR. NYWEIDE: Foundation.
    Q. Go ahead.
    A. So the chemical composition of which drug?
    Q. Etretinate.

### Page 97

    A. I don't know for sure.
    Q. In your paper that was subsequently published in
2006, did you or any of your co-authors look at any of
the metabolites for isotretinoin or Accutane?
    A. No.
    Q. Doctor, you were asked some questions about peer
review and comments you may have received from reviewers
regarding the 2006 article; is that correct?
    A. Yes.
    Q. Now, the reviewers who submitted the comments to
you and your co-authors for comment, do you know the
names of those reviewers?
    A. No. They are blinded to us.
    Q. Now, why are the names of the reviewers blinded
to you?
    A. So that there is not prejudice or bias on our
part in response to those comments, so that we don't send
Mafia hitmen to their homes to take care of them, so that
we don't go behind the editorial boards, you know, back
and call them directly and say, hey, you know, why did
you say this about our paper; we thought you were our
friends.
    Q. So when you were at -- responding to questions
asked by Ms. Bufano about reviewers have made various
comments about your article, to this day, you have no