# EXHIBIT 19

SUPERIOR COURT OF NEW JERSEY
LAW DIVISION, CIVIL PART
MERCER COUNTY, NEW JERSEY
DOCKET NO. MER-L-2643-10
A.D. #______________

| | |
|---|---|
| SHARON SINCOSKIE, Plaintiff, v. WEST-WARD PHARMACEUTICALS, et al., Defendants. | TRANSCRIPT OF MOTIONS |

Place: Mercer County Civil Courthouse
175 South Broad Street
Trenton, NJ 08650

Date: November 4, 2011

BEFORE:

THE HON. DOUGLAS H. HURD, J.S.C.

TRANSCRIPT ORDERED BY:

BETH S. ROSE, ESQ. (Sills Cummis & Gross, PC)

APPEARANCES:

P. ANN TRANTHAM, ESQ. (Law Office of Robert L. Salim)
Attorney for the Plaintiff

BETH S. ROSE, ESQ. (Sills Cummis & Gross, PC)
Attorney for the Defendant West-Ward Pharmaceuticals Corp.

Transcriber, Janet D. Persons
**J&J COURT TRANSCRIBERS, INC.**
**268 Evergreen Avenue**
**Hamilton, NJ 08619**
**(609)586-2311**
**FAX NO. (609)587-3599**
**E-mail: jjcourt@jjcourt.com**
**Website: www.jjcourt.com**

Audio Recorded

APPEARANCES (Cont'd):

CHRISTOPHER E. TORKELSON, ESQ. (Sterns & Weinroth, PC)
Attorney for the Defendant Baxter Healthcare Corporation

JAY P. LEFKOWITZ, ESQ. (Kirkland & Ellis, LLP)
Attorney for the Defendant Baxter Healthcare Corporation

RICKY M. GUERRA, ESQ. (Lavin, O'Neil, Ricci, Cedrone & DiSipio)
Attorney for Hospira

JASON SAYERS, ESQ. (Venable LLP)
Attorney for Hospira



**I N D E X**


| | **PAGE** |
|---|---|
| **MOTION** | |
| **ARGUMENT RE: DISMISSAL OF NON-PLA CLAIMS** | |
| By Ms. Trantham | 5 |
| By Ms. Rose | 9 |
| **DECISION** | |
| By the Court | 10 |
| **ARGUMENT RE: BAXTER** | |
| By Ms. Trantham | 12 |
| By Mr. Lefkowitz | 19 |
| **DECISION** | |
| By the Court | 31 |

THE COURT: Good morning.

THE ATTORNEYS: Good morning.

THE COURT: You can be seated. Thanks. I think it's a first I've ever had people come in early and everybody's ready so thank you. I appreciate it.

All right. We're on the record here. This case is Docket L-2643-10. Can I get your appearances please?

MS. TRANTHAM: Certainly, Your Honor, Ann Trantham for the plaintiff Sharon Sincoskie.

MS. ROSE: Good morning, Your Honor, Beth Rose from Sills Cummis for West-Ward Pharmaceuticals Corp.

MR. TORKELSON: Good morning, Your Honor, Chris Torkelson of Sterns & Weinroth on behalf of Baxter Healthcare Corporation.

MR. LEFKOWITZ: And Jay Lefkowitz from Kirkland & Ellis for Baxter as well.

MR. GUERRA: Ricky Guerra of Lavin, O'Neil, Ricci, Cedrone & DiSipio for Hospira.

MR. SAYERS: Jason Sayers from Venable LLP for Hospira.

THE COURT: Okay. Very good. Good morning, everybody. Let's deal first with the issue I'd like to revisit from my earlier ruling with respect to whether



the CFA is subsumed by the PLA.

I made a ruling prior that I wasn't going to grant the motion but it was denied without prejudice because I thought it was premature and it should be addressed later on.

In the interim we've had the Bailey case decided, well the Appellate Division affirmed Judge Happas's decision on that. How do you distinguish the Bailey case on that issue?

MS. TRANTHAM: Well, Your Honor, it's my position that the motion is still premature at this point and if you will just allow me to remind you.

THE COURT: Sure.

MS. TRANTHAM: When we were here in January we had agreed to conduct this case in phases if you would because the defendants had argued that the generics Baxter take them separately. They weren't in the case at the time.

They had argued that it would be prejudicial if we started the discovery process until we had confirmed the product identification.

Because we hadn't gotten to those sorts of factual issues yet we froze everything and we went towards product ID.

Your Honor had made a directive that we were

to follow that first amended complaint by a certain date naming the proper party defendants. We did that and seven days prior to that, you know, the Mensing decision came out.

Well we did not have the ability to do any factual discovery because we were still in phase one if you will. We believe that we are still premature because we haven't done any discovery in the case now as with regard to West-Ward and Hospira.

And, Your Honor, I might reference to you, I know that there are generics in Mensing. They argue that Mensing may apply and go on how fraud and specificity and all of their arguments.

I would point Your Honor to a ruling or recent activity in front of Judge Higbee of New Jersey, particularly a case that we have in front of her, the anticonvulsant litigation. It's the same class of drug as this and in front of her is Taro and Teva.

And we told Judge Higbee look, you know, we realize Mensing came out and it doesn't -- Mensing allows for claims to go against generic manufacturers in some instances.

Let us have limited discovery as to some of their labeling issues, et cetera, et cetera, and if they're one of the defendants that it doesn't apply to,



we'll let them out. If they are a defendant that Mensing does allow for a claim to go against, then we leave them in.

And we ended up dismissing 20 cases in front of Judge Higbee and still left some because she allowed for us to go forward with that limited discovery.

So I would say that at this stage, Your Honor, I still think that the Bailey case, even in spite of that ruling because we haven't gone past the product ID phase by agreement, that it's still premature to get to that issue at this point.

THE COURT: Well let me just ask because the Sinclair case in looking at it again, that case was dismissed without discovery or at the early stages of the case. What's going to change between now and, you know, after you get discovery on this specific issue with respect to whether the Consumer Fraud Act is subsumed by the PLA?

MS. TRANTHAM: Well, Your Honor, I still think that the Sinclair case is not on point and I realize that -- I think that that was a 505(j) or a (k) case if I'm thinking correctly, meaning the federal regulations were different to that.

And that -- this is a pharmaceutical case regarding not a medical device but an actual drug. And

so what I would say to that is in light of Mensing which is the most recent decision on the issue, we have to look to that and determine what their responsibilities are underneath the regs.

And Mensing says in some instances they are liable and, you know, I think that we can't get to that issue about whether or not that's viable if, you know, we don't have that discovery.

And as I said there's some other New Jersey Courts that are doing these pharmaceutical claims en masse that are also finding, you know, similarly allowing limited discovery to get to the crux of these issues.

So, you know, for instance I can't, you know, argue whether or not, you know, their conduct is to a level that would fall under that CFA. If I don't have any kind of access to anything, any of their documents, I'll only have like public source documents so far.

So it's our position that if we get to the stage where on limited discovery we find that they're not, you know, meeting the elements under the CFA whether it's, you know, even if it is arguably, you know, consumed under the PLA, if we get to that point I will dismiss them out. I'm okay with that.

But I think that I'm entitled to balance that



with my due diligence obligations under -- to my client to investigate whether or not they are in fact under Pliva v. Mensing, you know, liable there so.

THE COURT: Okay. Thank you. Do you want to respond?

MS. ROSE: Your Honor, Beth Rose.

THE COURT: Sure.

MS. ROSE: Your Honor asked plaintiff's counsel how can she distinguish Bailey and respectfully I don't think we heard an answer because Bailey is not distinguishable.

Whether or not the Consumer Fraud Act is subsumed by the PLA is a pure question of law. There is no amount of discovery now or in five to ten years that's going to change that issue.

The Sinclair case is directly on point. The Sinclair case was not a medical device case, it was a case involving Vioxx, a pharmaceutical. And there, as Your Honor may recall, the trial Court dismissed the complaint, the Appellate Division reinstated it, sent it back for discovery and remanded for further proceedings.

And the Supreme Court found that there was no need for further discovery or further proceedings. This was a question of law and the CFA claim was

dismissed. And we submit that that's what should occur here.

The issues regarding Pliva v. Mensing are totally different to --

THE COURT: Okay. We'll address that in a --

MS. ROSE: We'll address that.

THE COURT: -- in a minute. Yes.

MS. ROSE: I raise that only because it seems that plaintiff's counsel is conflating some of the issues raised by Mensing and the issue of whether or not the CFA claim is subsumed by the PLA.

If Your Honor is inclined to dismiss the CFA claim because it is subsumed, then I won't address the pleading issue --

THE COURT: Right.

MS. ROSE: -- in terms of whether it's Pliva specificity.

THE COURT: Okay. All right. With all due respect I'm going to grant the motion with respect to dismissing the CFA claim as being subsumed by the PLA.

I understand your point and frankly I was persuaded by it last time. But in taking another look at the Sinclair case, the Bailey case came out in the meantime even though Bailey was decided at the summary judgment phase.



It's clear to me that I mean the Appellate Division called the trial Court's ruling unassailable on the law and I think it's the same analysis here.

So respectfully I'm going to dismiss the CFA claim. I think you had stipulated that the other non-PLA claims would be dismissed which we have them listed here in the proposed orders. Counts 4, 5, 8, 9, 10, and 11 would be the counts dismissed with respect to West-Ward, Hospira, and Baxter.

I think that deals with all of the West-Ward and Hospira issues, correct?

MS. TRANTHAM: I believe so.

THE COURT: Okay.

MS. TRANTHAM: I have to check the order to be sure.

THE COURT: Okay. I'm sorry, you have to what?

MS. TRANTHAM: I need to check the order.

THE COURT: Okay.

MS. TRANTHAM: So in other words the Court is granting dismissal of all of the non-PLA claims --

THE COURT: Correct.

MS. TRANTHAM: -- as to West-Ward and Hospira with prejudice?

THE COURT: Correct.

MS. TRANTHAM: Thank you, Your Honor.

THE COURT: Correct.

UNIDENTIFIED SPEAKER: Your Honor, I would ask whether that also covers Count 6, the negligent misrepresentation claim to be subsumed as well?

THE COURT: Yes. I thought -- it would but I thought that was withdrawn in light of the correspondence I saw. But it would cover it anyway. I guess -- I don't think the orders -- let me just take a look at the order. I'll just -- 4, 5, 8, 9, 10, and 11 -- I'll stick in 6 just so it's crystal clear.

Okay. So we're on to the Baxter Mensing issue. I'll get you a copy of these orders in a minute. Just we'll do them all together. Sorry.

I saw Baxter's reply. Let me ask counsel, what legal authority does Baxter have as a RLD, ANDA, well RLD holder, ANDA manufacturer to unilaterally change the labeling? I think that's the issue.

MS. TRANTHAM: Yes, Your Honor, and I would argue that it's not the cases they put in the reply that they submitted to the Court. They want the Court to think of generic and brand as an NDA and a ANDA black and white.

When a drug company is actually becomes the RLD holder they have certain responsibilities to be the



flagship if you will, the person that is in charge of the label, and that's in case there's new science that comes out like say DNA testing in the case of one of the drugs Carbamazepine. They put this new information in the labeling. Now that new information then the generics will follow suit under Pliva v. Mensing rationale.

Now they say that they do not have a duty as the RLD holder and they can't unilaterally change the label. They're not an ANDA. Once they become the RLD they are responsible under the regs and under the rationale of Pliva v. Mensing.

What they're arguing is pre-Pliva era law, the Foster decision and all the cases they cite, Smith, Domain (phonetic), Morris, Metz, all those, they all have one thing in common and that is that they are underpinned by that Foster v. American Home Products decision of 1994.

Well Foster was premised on three essential elements, you know, doctors rely on prescribing information, or excuse me, that they don't rely on prescribing information and that the drug maker owes no duty to give if they're generic that warning.

And then the kicker was that Foster said that it was remote that a Court would ever let a generic, or

in that case the term RLD wasn't used but, that they would ever let them off the hook, okay.

Well we know now that since Pliva v. Mensing has come out that's turned the Foster analysis on its head and Foster no longer applies in light of Pliva v. Mensing.

The Court, Supreme Court itself discussed, you know, the obligation of an RLD holder, that they would be in charge of the label. Pliva was a limited situation in which it talked about pure ANDA companies. Pliva was not a RLD holder in, excuse me, Pliva the company was not a RLD holder in the situation of Pliva v. Mensing.

Your Honor, I argued Pliva v. Mensing below in the Eighth. And so these guys, they're trying to sort of conflate the issue to where they're saying, look, we get off.

I would again refer Your Honor to action in Reglan v. Metcliffe (phonetic), (indiscernible) in Pliva before Judge Higbee where she is right now considering this very issue about whether or not the RLD holder/brands that don't or where the plaintiff did manufacture the drug has obligations under basic principles of negligence under tort law.

And so it is thought that, and it has been



argued in New Jersey as well, that that's the ramifications of Pliva v. Mensing is to overturn the authorities that they have cited previously that are (indiscernible).

THE COURT: Well in Mensing was the RLD holder the NDA manufacturer?

MS. TRANTHAM: At that time yes, Your Honor. The way that that worked was Wyeth was the brand and then I can't exactly remember Ms. Mensing's injuries, but Wyeth eventually left the market and they sold all of their royalties and rights to Schwarz Pharma who then became the RLD holder in that case. And then Schwarz eventually sold to Avalon.

Before Judge Higbee right now it's being argued by Wyeth, Schwarz and Avalon that of course Pliva v. Mensing did not overturn the sort of the Foster rationale and analysis that all of the cases that were similarly also cited before her and so, you know, that's their position and honestly it's not set in stone and it's not a consensus issue out there so.

THE COURT: Well, is there any regulatory authority for an RLD holder as an ANDA manufacturer that they can change the labeling on their own?

MS. TRANTHAM: Yes, Your Honor, they have to change the labeling on their own.

THE COURT: No, but can they do it as if they were an RLD brand name manufacturer?

MS. TRANTHAM: Yes, Your Honor --

THE COURT: They don't need --

MS. TRANTHAM: -- that's what I'm saying.

THE COURT: -- they don't need prior FDA approval?

MS. TRANTHAM: No, sir. Under the regs as we've cited, you know, in our complaint, we have listed those regulations out.

The RLD -- once the brand has left the market, there is no other way to change the label. If you would buy into their rationale, okay, so you have the label, say the brand has left the building, Pfizer, okay.

And then there is only the RLD holder. The generics under Supreme Court just said, well, they can't unilaterally change the labeling. Okay. Well if they can't change the label and now the RLD person, the person who is really in charge of the label because the brand left the building, they're going to claim that they can't change the label? Then who can change the label in light of new scientific developments?

The FDA regulations say that somebody at all times has to be the flagship in charge of changing a



drug label.

THE COURT: Well their argument is that in this situation the default is the FDA.

MS. TRANTHAM: No, sir. The FDA is not, it has authority to change the label. Only until what recent regulations were enacted in two thousand and late eight, '09, did they even get any kind of enforcement authority?

The FDA simply negotiates with manufacturer defendants. They can't tell them under freedom of press what the print or say in the label. They work together as a joint cooperative situation to get the labeling language down.

If Your Honor goes to the FDA website you can see various correspondence on these drugs where it's a give and a take process.

The FDA doesn't say you've got to put this in the label. It's kind of like an IRS kind of situation, Your Honor. The IRS is a self-auditing system so the FDA only knows what the drug company tells them. Okay. Just like the IRS only knows what kind of taxes we report.

Then what happens is the FDA works together with the defendants. They craft the language of the labeling. And then from there, you know, they go

forward.

Now if -- when the drug hits the market, everybody in the market, there starts to be signals, what's called safety signals in the market, where injuries are occurring, then our system in the United States is the voluntary reporting system by doctors where they give these reports to the drug company.

Then the drug company has to let the FDA know, hey, there are some signals. We're concerned. Maybe we need to strengthen our labeling language.

Well if you don't have generics under the Supreme Court ruling in some instances, now if they're out of the picture and then the RLD is out of the picture as they would argue here, then who the heck is going to change the label when the brand has left the building?

Well the regs provide under the analysis that they do it and they submit those changes to the FDA. Now the FDA might in a considered deliberative panel say well that's -- that's kind of too strong language. They did that in some suicide cases.

But then we don't have that situation here. They've never approached the FDA and said, look, (indiscernible).

We're arguing under basic tort theories that



they didn't fulfill their duties as the regs require them to do and had they done so then the labels would have been changed.

THE COURT: Okay. Thank you.

MR. LEFKOWITZ: Thank you, Your Honor. I had the privilege of actually arguing the Mensing case at the Supreme Court and I have just heard a rendition of that case which is a little, little at odds with the case that we litigated.

And I want to start if I may with your very cogent question because I think, although I have about eight or nine minutes I'd like to explain to you, I want to start with really the answer.

Because if in fact plaintiffs were correct that the FDA had a policy or the statute, Congress had a policy of allowing a reference listed drug to change a label unilaterally, then of course we would not be on the Mensing side of the equation, we'd be on the Wyeth side of the equation.

Because of course what turned the Wyeth case the way it did with the Supreme Court's recognition that a state law cause of action for failure to warn can proceed because there is actually an ability of a grant company to make a warning to change unilaterally and therefore if they don't do it, it's perfectly

appropriate to let a state process find them liable.

Mensing was very different. Mensing said a generic cannot make a unilateral change and therefore any state duty that would impose such an obligation is preemptive.

There are only two types of approved drugs under the statutory and regulatory frame work. There is an approved product, there is an application which refers to the new drug application, and then there's an abbreviated new drug application, an ANDA. Those are the only two types of drugs that get approved.

There is something referred to as an RLD, but that's not a statutory term. You don't become an RLD -- for example, if I become licensed to practice law, I'm licensed, I'm a lawyer. I might be designated by my law firm a partner or an associate. That's just a designation, that's not what I am.

An RLD is the FDA's designation for which drug company is what I would say the leader of the label. The label that's almost like the compass that every other subsequent applicant has to follow.

As a general rule the reference listed drug, the leader for the label, is the brand. When a brand exits the market the FDA designates a generic to serve that process. Usually it's the generic that has the



largest market share, but it's up to the FDA.

Very importantly the FDA has said -- and this is really the answer to the whole motion to dismiss, although if you'll permit me I'll make a few other points -- what the FDA has said is ANDAs in a situation where a brand exits the market, ANDAs may still subsequently come on the market and if they refer to the withdrawing brand name product they may still be approved by the agency if all other requirements are met. In other words if they follow the RLD.

And then, and this is the critical language from the regulation, if FDA determines that labeling for this drug product should be revised to meet current standards, the agency will advise ANDA applicants to submit such labeling.

In other words an RLD, if it's an NDA, can do it on its own. That's Wyeth. An RLD, if it's an ANDA, cannot. That's this case. And I will hand up at the end of my argument the notice from the Federal Register at 73 -- 76 FR 32366-01 which I have.

But in fact this is just one of about 60 different Federal Register notices in the last few years where the FDA whenever it encounters this situation. A brand leaves the market, they designate a generic to be the RLD, they then specifically say, and

by the way, if the label needs to be changed, we'll do it.

And of course the reason the FDA has said that is because of the underlying premise of the Supreme Court's decision last year in Mensing which is that brand manufacturers have ultimate authority for working out the label with the FDA because they do the clinical testing. They're the experts in safety and ethicacy.

But as the Supreme Court recognized, generic drug companies, and that's what Baxter is in this context, that's what the plaintiff referred to Baxter as today, Baxter is listed as an ANDA. If I look as I did yesterday in the FDA's website, Baxter's ANDA number is 084307. There's no question it's an ANDA.

And as the Supreme Court recognizes, ANDAs are specialists in copying. They're not specialists in coming up with the safety and ethicacy because they don't do the clinical testing.

They -- even if they encountered a side effect they wouldn't have the denominator. They wouldn't know whether that's a random event, whether it's a regular event.

So that's why the FDA says when we no longer have a brand in the marketplace we the FDA will tell



you if a label needs to change.

THE COURT: Does the ANDA manufacturer as an RLD holder have any unilateral authority to make labeling changes?

MR. LEFKOWITZ: Absolutely not because there are only two species of approved drugs. There is the NDA and there is the ANDA. The NDA, according to Wyeth and according to the FDA, can make a unilateral change. The ANDA can never make a unilateral change. The only time an ANDA can make a change is either if the FDA tells it to or if a brand makes the change and then the FDA approved the brand change, then the ANDA has to follow suit.

Now I want to just step back if I may for I'll try to do this in about four minutes, Your Honor. There are actually a lot of reasons why the motion to dismiss Baxter should be granted.

The threshold reason is that under undisputed New Jersey law if you don't take a drug company's product you can't sue the drug company. That's the leading case of Namm which goes back to two thousand and -- 1981.

Makes clear that it's a fundamental principle of product liability law in this state that a defendant manufacturer has to make the particular product.

So as a threshold matter there's no basis to impose liability or to let the case proceed. How do the plaintiffs get around that bedrock principle? They cite and they ask this Court to really revolutionize product liability law in New Jersey by adopting the reasoning of two cases, an intermediate case in California called Conte and a District Court case in Vermont.

Well there are two problems with that. Number one, under New Jersey law those cases on their face don't even apply because those are both negligence cases and as we know there is no independent negligence principle because it's subsumed, as we've just heard, under the PLA.

And of course that's why the theory in the Conte case was rejected on two occasions already by New Jersey Courts in the Westerland Wyeth case in 2008 and the Sloan v. Wyeth case in 2004.

Moreover, the Conte principle itself has already been rejected by 55 other Courts applying the laws of 22 different states.

Now I'm not telling you that because 55 other Courts have rejected it you should reject it. You're obviously free to make whatever law in New Jersey you want to make. But New Jersey has already rejected the



theory of that case because we don't even have viable negligence claims in a drug product liability case.

The other thing I want to make clear is that no Court in the country, even the Vermont and the California Courts, ever applied that Conte principle to an ANDA as opposed to an NDA claim.

In other words, it's one thing to say that an NDA holder that could change the label and didn't is somehow at fault for someone's injury from using the copycat, the generic.

What the plaintiffs here are asking you to do is not only to apply the Conte principle which has already been rejected in New Jersey, but to actually extend it, to extend it to apply it to an ANDA which can't change the label to begin with, notwithstanding the fact that they've come up with this clearly erroneous argument about an RLD, and then say because some other generic copied the first generic, therefore the first generic is liable. That wouldn't even fit the Conte case, much less New Jersey law.

Finally, Your Honor, there's no question that when the NDA holder leaves the marketplace, as I've said, and the FDA designates one generic to serve as the RLD, it is designating that, as the regulation makes clear, for a limited purpose.

So that every subsequent generic that comes on the market will know what the label is that they should follow. Because obviously generics, since they can't make up their own labels, they have to know what label to follow. But the only purpose in designating the RLD is for that.

There is no statutory or regulatory authority that gives an RLD holder, qua-RLD, the right to unilaterally change a label. That right either goes to an NDA holder or it's withdrawn from an ANDA holder. And ANDA RLDs are nowhere converted into NDAs merely because they are serving that reference listed drug function.

And finally the last point I would make simply, and I think you've really addressed it already, is at least with respect to Baxter, they come up with this last gassed argument about consumer fraud. Obviously that is subsumed as you pointed out under the PLA.

So I would say, Your Honor, you asked a very pressing question at the very beginning. If the plaintiff were correct that an AND holder was somehow converted into having the statutory authority and the regulatory authority of an NDA holder upon being designated the RLD, it might be a different case.



And there is absolutely nowhere in Mensing that that issue comes up at all. So I would submit, Your Honor, that this is really asking you to not only apply brand new law in New Jersey, but also to extend the reasoning of two extraordinarily unpopular cases, cases that have been rejected not only in New Jersey but in 55 other states -- courts and actually extended beyond even the scope that those two cases apply to.

THE COURT: Okay. Anything else?

MS. TRANTHAM: Yes, Your Honor, I just want to follow up on a couple of points. You know counsel said that the RLD is appointed by the FDA as the leader for the drug and he admitted that several different times. And they're the ones that are responsible for that.

The Supreme Court decision even talks about that, I'll just find the language for Your Honor, it said the FDA construes regulations to oblige the generic manufacturers to seek to revise their labeling and provide FDA information supporting the risk.

Pliva, you never did hear him say that there was at issue an RLD in the situation of Pliva v. Mensing. The Court said in that decision that in certain instances there is -- has to be somebody responsible for changing the label.

He would have Your Honor believe that, you know, that they have absolutely no obligation but in the same breath to turn around and tell Your Honor that they're the leader, that somebody has to be the leader.

Well if you don't have anybody that's the leader how in the heck can the drug label ever, ever be changed?

So I would tell Your Honor that there is authority out there in the Pliva v. Mensing plus in the regulations that provides for a mechanism that somebody has to be in charge of that label and here that was the RLD holder.

The other thing, we're not asking Your Honor to revolutionize and apply any kind of new law out there. In fact I would argue alternatively if Your Honor would like to take the matter under advisement and once Judge Higbee rules on the issue in front of her we will, you know, let the Court know as well.

And then what I would do is if, you know, Judge Higbee ruled adversely to plaintiffs then I would be willing to immediately, you know, dismiss the Baxter myself voluntarily.

But this is not a set in stone issue as he is trying to make it believe that they have no obligation whatsoever under the current law, Your Honor. That's



just not the case under the regs and under Pliva.

THE COURT: Okay. Just --

MR. LEFKOWITZ: Your Honor, if I could just since it's our motion. First of all, plaintiff's counsel started to make a point about Mensing about how the Court found some obligation to at least ask the FDA to make a label change.

As I'm sure you know having read the Mensing decision, that was in fact the second argument the plaintiffs made in Mensing. That was the argument that the plaintiff's prevailed upon in the court below, in the Eighth Circuit.

And that is precisely what the Supreme Court rejected and said not only does an ANDA, a generic, never have the ability unilaterally to change its label, but there can be no liability for failing even to ask the FDA because that would create what the Court said was a mouse trap event where so what if you ask the FDA because unless you knew what the FDA's response would be you couldn't prove anything.

So the plaintiffs are in a sense trying to re-argue the second part of Mensing in this case which they lost. But it's irrelevant because the fundamental point, and there is nothing in Mensing that even addresses the responsibility of the RLD, the only

reference to RLD in Mensing is in a footnote that simply says as we use it here a generic drug refers to a drug designed to be a copy of the reference listed drug. It's just definitional.

There is no issue at all because this issue specifically didn't come up in Mensing, but the issue that is unambiguous and I will simply if I may hand up this regulation to the Court and a copy to the --

THE COURT: I have it here, 72 FR 39629?

MR. LEFKOWITZ: Yes. And it says in this situation once a brand has exited the market, and this particular regulation dealt with a drug called Orlam (phonetic) which exited the market, and of course the FDA explains it's exiting the market not for reasons of safety because if it were reasons of safety they would be -- they wouldn't allow a generic to be on the market. They're just exiting for business reasons.

And so what they say in that situation is they designate another company to be the RLD and then they say if the FDA determines that the labeling for this drug product should be revised to meet current standards, the agency will advise ANDA applicants to submit such labeling.

Absolutely no authority in the regulation, in the statute, and certainly not in Mensing that would



impose an obligation or even create an opportunity for an ANDA serving as the RLD to do what the Supreme Court in Mensing made absolutely clear it can never do which is unilaterally act.

THE COURT: All right. I'm going to grant the application by Baxter respectfully. I mean there's no dispute that the plaintiff did not in jest or was injured by Baxter's generic drug in this case. For that reason alone this is warranted to be dismissed against Baxter.

But then the arguments made as the RLD holder that they have some other type of obligations, it's an interesting argument but, you know, in looking further into it, it just doesn't -- it's not enough there to at this point even at this early point in the case for Baxter to stay in.

The bottom line is is that they are an ANDA manufacturer and that's the whole distinction here. And the rationale of counsel for Baxter is strong that the reason is is because as the ANDA holder they did not develop the drug. The NDA holders did.

The NDA holder is not on the market anymore in this case. An RLD holder has to be designated. It's Baxter. I mean whether it's because they were the, you know, marketing leader at the time or not

really isn't relevant.

They're designated as the RLD holder but the regulation cited by counsel makes it clear that despite being the RLD holder it's the agency that is responsible for advising as to any changes in the label because they are an ANDA manufacturer. And I don't think that contradicts in any way with Mensing. I think it's supported by Mensing. All right. Anything else?

MR. LEFKOWITZ: Thank you, Your Honor.

MS. ROSE: Thank you, Judge.

THE COURT: Okay. Thank you. Just wait around. We'll get you copies of the orders, okay?

MR. LEFKOWITZ: Thank you.

(Audio off)

THE COURT: Please be seated. In terms of case management, do you foresee any amendments at this point to the complaint or the complaint is what the complaint is or?

MS. TRANTHAM: I might have to see, Your Honor, about whether or not there are any amendments. I might end up having an amendment, Your Honor.

THE COURT: Okay.

MS. TRANTHAM: I can tell you respectfully I will seek an appeal from your ruling.



THE COURT: Okay.

MS. TRANTHAM: As far as when I'll be in a position to amend might be a couple months say, I don't know, three, four months down the road once sort of all the facts come in as to that.

And I would like to just have the live pleading as we go forward in the matter to be cleaned up a little bit --

THE COURT: Okay.

MS. TRANTHAM: -- as the developments have fallen on, et cetera, so.

THE COURT: Okay. And when you say, and I'm not holding you to anything at this point, but when you say future amendments, do you mean as to claims or as to parties?

MS. TRANTHAM: I might end up doing it just to sort of be as to the parties and the claims. I mean I'm just --

THE COURT: Okay.

MS. TRANTHAM: -- I'm trying to --

THE COURT: All right.

MS. TRANTHAM: -- allow for everything.

THE COURT: Sure.

MS. TRANTHAM: But I just don't want to preclude the chance to have one last opportunity to

amend that.

THE COURT: Okay. Very good. Anything else?

MS. ROSE: Your Honor, can the Court set a firm date for plaintiff to file an amended complaint if in fact that's what's going to occur? By my calculations there are only two claims that were made as to West-Ward and Hospira, manufacturing defect and design defect. We question whether those are viable as well.

THE COURT: Is there any opposition to a certain date to do that?

MS. TRANTHAM: No, sir, Your Honor. As I said I'd like a couple of months in order to effect that and to digest where we're at with this. You know 90 days from now is acceptable or 120 is fine as well.

THE COURT: Okay. So, all right, well I'll give you to March 1st, okay?

MS. TRANTHAM: Okay. That's fine.

THE COURT: I should have written in one of the orders there before they made copies of it. But, counsel, can you just send in an order to that effect if you don't mind?

MS. ROSE: Yes, Your Honor.

THE COURT: Just saying that plaintiff has until March 1st to file any amendments to the first



amended complaint.

And counsel for Pfizer are they here or they're not at this point?

MS. TRANTHAM: No, sir, Your Honor, Pfizer's motion is not before you.

THE COURT: Okay. Did you say Pfizer's motion?

MS. TRANTHAM: Pfizer doesn't have anything before you right now.

THE COURT: Oh, they don't have anything. Okay.

MS. TRANTHAM: They're under a tolling agreement with us.

THE COURT: I want to make sure I didn't miss anything.

MS. TRANTHAM: Right. Yes.

THE COURT: Okay. All right. Anything else? All right. Thank you. Just wait around and the orders will be out.

* * * * *

**CERTIFICATION**

I, JANET D. PERSONS, the assigned transcriber, do hereby certify the foregoing transcript of proceedings on compact disk, playback number 9:56:32 to 10:37:08, is prepared in full compliance with the current Transcript Format for Judicial Proceedings and is a true and accurate compressed transcript of the proceedings as recorded, and to the best of my ability.

Janet D. Persons ss
JANET D. PERSONS AOC # 575
J&J COURT TRANSCRIBERS, INC. DATE: 11/16/11