UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

IN RE:                                                   MDL #1626

ACCUTANE PRODUCTS LIABILITY              CASE #8:04-MD-2523-t-30TBM

                                                         8:13:CV-1287-T30TBM

PLAINTIFF'S RESPONSE TO SANCTIONS

Comes the Plaintiff, Kyle Berry, by counsel, and hereby pursuant to this court's order hereby responds to the Court's October 28 show cause why sanctions should not be imposed.

1. Counsel for Plaintiff is obligated under the rules of professional responsibility to represent the interests of the Plaintiff.  This includes making legitimate legal arguments supported by the facts and the law.  Defendant's counsel and this court may disagree but it is an ethical duty to present the facts and the law in the light most favorable to the Plaintiff.

2. Defendant cites *Hertz Corp. v. Friend*, 559 U.S. 77 (2010) as the authority for the proposition the Supreme Court adopted the "Nerve Center Approach" as referring to the place where the corporation's officers direct, control, and coordinate the corporation's activities.  What is missing is the fact that Congress passed the Federal Courts Jurisdiction and Venue Clarification Act of 2011, ("Act") effective January 6, 2012, which amended the diversity rules to specifically provide that a foreign corporation has its place of incorporation and its principal place of business counts as separate parts of the diversity analysis, "When one of the parties to a civil action is a corporation, subsection 1332(c) deems that corporation to be a citizen of any 'State' in which it has

1

been incorporated 'and of the State where it has its principal place of business. The Act continues to state that the "intent was to preclude diversity jurisdiction over a dispute between an in-state citizen and a corporation incorporated or primarily doing business in the same state. According to the Act, "neither party faces a threat of bias if the action were to be resolved in state court. Therefore, both the state of incorporation and in a corporation's principle place of business must be considered when analyzing diversity.

The pertinent section of the act that describes Actions Involving Corporations" states as follows:

> *Actions involving corporations*
>
> When one of the parties to a civil action is a corporation, subsection 1332(c) deems that corporation to be a citizen of any ''State'' in which it has been incorporated ''and of the State where it has its principal place of business.'' The quoted phrase was added to paragraph 1332(c)(1) in 1958 to expand the concept of corporate citizenship. The intent was to preclude diversity jurisdiction over a dispute between an in-state citizen and a corporation incorporated or primarily doing business in the same state. In these situations, neither party faces a threat of bias if the action were to be resolved in state court.
>
> For example, today under subsection 1332(c), if a corporation incorporated in Delaware has its principal place of business in Florida, it is deemed to be a citizen of both Delaware and Florida. If a Florida citizen or a Delaware citizen sues that corporation, diversity jurisdiction would be defeated because both the plaintiff and defendant would be treated as citizens from the same state (Florida or Delaware).
>
> When an action involves a U.S. corporation with foreign contacts or foreign corporations that operate in the United States, Federal courts have struggled to apply this statute. *See* C. Wright & M. Kane, *supra,* § 27, at 170. The difficulty occurs primarily because paragraph 1332(c)(1) refers to a ''State'' and does not specify whether the term includes contacts with a foreign state (country of incorporation or principal place of doing business). Subsection (e) of section 1332 defines ''States'' as including the Territories, the District of Columbia, and the Commonwealth of Puerto Rico. Some courts

have noted that because the word ''States'' in the subsection begins with a capital ''S,'' it applies only to the fifty states and the other places specified in the definition and therefore does not apply to corporate citizens of foreign states. *See, e.g., Torres v. Southern Peru Copper Corp.,* 113 F.3d 540, 543 (11th Cir. 1997); *Cabalceta v. Standard Fruit Co.,* 883 F.2d 1553, 1559 (5th Cir. 1989). Other courts applying paragraph 1332(c)(1) have concluded that the word ''States'' should mean foreign states, as well as states of the Union. *See, e.g., Nike, Inc. v. Comercial Iberica de Exclusivas Deportivas, S.A.,* 20 F.3d 987 (9th Cir. 1994).

*9  The following are examples of how the courts have reached different conclusions in trying to apply the provision in the absence of specific references to ''foreign states.'' Some circuits have treated a U.S. corporation with its principal place of business abroad as a citizen only of its place of incorporation. *See, e.g., Cabalceta, supra* (plaintiffs from Costa Rico (aliens) brought suit against Standard Fruit Company, a Delaware corporation with its principal place of business in Latin America); *Torres, supra* (alien plaintiffs brought suit against Delaware corporation with principal place of business in Peru). Such treatment of the corporations as citizens of Delaware while ignoring their foreign contacts resulted in decisions upholding the availability of Federal alienage jurisdiction and allowing the actions to proceed in Federal court.

The Ninth Circuit, in contrast, has rejected any distinction between foreign and domestic corporations; each would be deemed a citizen of both its place of incorporation and its principal place of business. *See Nike, Inc., supra,* at 990. Although technically dicta as applied to U.S. corporations with business centers abroad, the Ninth Circuit's approach has been applied to U.S. corporations in a number of district court decisions. *See* Note, David A. Greher, *The Application of 28 U.S.C. § 1332(c)(1) to Alien Corporations: A Dual Citizenship Analysis,* 36 Va. J. Int'l L. 233, 251 n.92 (1995) (collecting cases). Such an approach would result in a denial of alienage jurisdiction over suits brought by aliens against U.S. corporations that have business centers abroad.

The amendment in section 102 would resolve this division of authority by implementing the diversity-curtailing intent of this provision with regard to corporations with foreign activities. It would insert the words ''foreign state'' in two places in paragraph 1332(c)(1) to make it clear that all corporations, foreign and domestic, would be regarded as citizens of both their place of incorporation and their principal place of business. The amendment would result in a denial of diversity jurisdiction in two situations: (1)

where a foreign corporation with its principal place of business in a state sues or is sued by a citizen of that same state, and (2) where a citizen of a foreign country (alien) sues a U.S. corporation with its principal place of business abroad. Such a change would bring a degree of clarity to an area of jurisdictional law now characterized by conflicting approaches in the Federal courts. State courts of general jurisdiction would remain available to the parties.

By more clearly defining citizenship of corporations with foreign ties, the legislation would deny access to a Federal court in a small range of cases for which a Federal forum might be available today. For example, a company might have its principal place of business in a foreign state and nonetheless choose to incorporate in the United States. Such incorporation would make the corporation a citizen of its state of incorporation and, according to some courts, enable the corporation to claim access to a Federal court in a dispute with another foreign national. (When such disputes arise from allegedly tortious conduct overseas, the Federal courts will often assert jurisdiction only to dismiss under the doctrine of forum non conveniens.) Section 102 would alter the jurisdictional analysis by deeming the corporation to be a citizen of its state of incorporation and of the foreign state where it has its business center, blocking jurisdiction on the well-established ground that disputes between two aliens do not satisfy the jurisdictional requirements of subsection 1332(a). The statute would have no impact on the freedom of corporations to incorporate where they see fit, or to do business in accordance with their own business plan. It would simply treat them as citizens of their place of incorporation and principal place of business on a basis consistent with the treatment of domestic corporations.

The change made by this amendment follows the definition Congress used for corporate citizenship in the Multiparty, Multiforum Trial Jurisdiction Act of 2002 (Pub. L. No. 107–273). More specifically, that law provides that ''a corporation is deemed to be a citizen of any State, and a citizen or subject of any foreign state, in which it is incorporated or has its principal place of business. . . .'' This definition is now codified as 28 U.S.C. § 1369(c)(2).

Section 102 also revises the wording of paragraph 1332(c)(1) so that a corporation shall be deemed a citizen of ''every State and foreign state by which it has been incorporated,'' instead of ''any State . . .'' (Emphasis added.) Although corporations can incorporate in more than one state, the practice is rare. In applying the present wording of the subsection, most courts have treated such multi-state corporations as citizens of every state by which they

4

> have been incorporated. This section would codify the leading view as to congressional intent and treat corporations as citizens of every state of incorporation for diversity purposes. *See* C. Wright & M. Kane, *supra,* § 27, at 167–68.

Plaintiff takes the position that Congress changed the law regarding diversity of involving corporations. The legislative history supports plaintiffs' interpretation of the change in the law. A copy of 28 U.S.C. 1332 as amended is attached hereto and designated **Exhibit 1**. The legislative history is attached hereto and designated **Exhibit 2**.

Plaintiff in good faith can argue that the Congress has changed the law regarding a corporations diversity jurisdiction.

3. There are numerous uncontroverted facts that support plaintiff's motion to remand.

   a. LaRoche is a Swedish global healthcare company whose headquarters are located in Basel.

   b. F. Hoffman-LaRoche also owns Genentech a wholly owned affiliate. See Exhibit 3.

   c. Genentech's website page states it has a location in Louisville, Kentucky, Exhibit 4.

   d. The Kentucky Secretary of State webpage identifies Genentech, Inc. is a registered as a foreign corporation in Kentucky, its Organizational number is 0415583, copied and attached hereto and designated Exhibit 5.

   e. Application for certificate of authority filed with the Kentucky Secretary of State, copied and attached hereto and designated Exhibit 6.

   f. Annual report on line filing with the Kentucky Secretary of State, copied and attached hereto and designated Exhibit 7.

Therefore, Kentucky is a state of incorporation for defendant.

4. Plaintiff's counsel is not the only attorney with the opinion that there have been Congressional changes to a corporation's diversity jurisdiction. See:

   a. Michigan Bar Journal, May 2012, copied and attached hereto and designated Exhibit 5.

b. New clarity on diversity jurisdiction for multinational corporations by Butler Rubin, Corporate Counsel, April 2012, copied and attached hereto and designated Exhibit 6.

## CONCLUSION

For all the foregoing reasons, plaintiff respectfully requests this Court not impose sanctions

Respectfully submitted,

/s/ *Nader George Shunnarah*

_____
NADER G. SHUNNARAH
Counsel for Plaintiff
Kentucky Home Life Bldg.
239 South Fifth St., Suite 1800
Louisville, KY 40202
Telephone:  502-587-7919

## CERTIFICATE OF SERVICE

I hereby certify that a true and complete copy of the foregoing document was served electronically through the CM/ECF system upon Edward A. Moss, Defendant's Liaison Counsel, Shook, Hardy & Bacon, 100 North Tampa St., Suite 2900, Tampa, FL 33602-5810, James A.Comodeca, Sarah M. McKenna, and David T. Schaefer, Dinsmore & Shohl LLP, 101 S. 5th St., Suite 2500, Louisville, KY 40202-3197 on this 4th day of November 2013.

/s/ *Nader George Shunnarah*
_____
NADER GEORGE SHUNNARAH